### LEWIS S. SERVIS ADS. JOHN COOPER.

1. Where a contract was made that A should serve in the army two years as substitute for B, and the substitute was accepted and the service actually performed, it is no defence in a suit brought for the service money, to set up that the substitute deceived the officers of government as to his name, age, &c., by misrepresentation.
2. Where the original contract had no reference to any illegal act, and it did not appear that any law was violated, or any injury done to the service of the United States by the false representation, the court will not consider it tainted with fraud, so as to prevent its enforcement.
3. The absence of a witness whose testimony might have been discovered and procured previous to the trial, is not a sufficient ground to grant a new trial.

On rule to show cause, &c.

The suit was brought to recover $850, for two years' service as a substitute for the defendant in the army of the United States. There was a verdict for the plaintiff. On the argument of a rule to show cause why the verdict should not be set aside, it was contended by the defendant, that the contract was fraudulent on the part of the plaintiff, and that the court would not lend its aid to enforce it. And also that since the trial the defendant had discovered new and material documentary and other evidence not in his power at the trial, and that an important witness, whose testimony could not then be produced, has since returned to his residence in New York.

The rule to show cause why there should not be a new trial was argued before the CHIEF JUSTICE, and Justices ELMER, VREDENBURGH, and WOODHULL.

For plaintiff, *A. V. Van Fleet* and *R. S. Kuhl.*

For defendant, *B. Van Syckel* and *G. A. Allen.*

The opinion of the court was delivered by

ELMER, J.  The defendant, having been drafted to serve in the national forces, the plaintiff, who is a man of color, alleges that he agreed to pay him $850 for two years' service as his substitute, and the jury found a verdict for that sum, with interest.  It was submitted to them as questions of fact, whether the plaintiff did in fact serve as the defendant's substitute, and whether he promised to pay him, as alleged.  I see no reason to doubt that these questions were rightly decided upon the evidence presented to the jury.  A rule to show cause why this verdict should not be set aside and a new trial ordered having been allowed, it is now insisted, upon several grounds, that it ought to be made absolute.

And first, it is urged, that admitting the plaintiff's allegation to be true, he is not entitled to recover, because he made himself a party to a deceit upon the officers of the government.  It appears that, having been rejected when first offered, and it would seem more than once, he was induced by the defendant to misstate his name, age, and place of birth, was then accepted, and actually served from the 1st of September, 1864, until honorably discharged, when the war was ended, October 20th, 1865.  The defendant, in consequence of his acceptance, received a certificate of exemption from draft for two years.

The law is well stated in the case of *Armstrong* v. *Toler,* 11 *Wheat.* 261, relied on by the counsel of defendant, " that when a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not

lend its aid to enforce it, and if the contract be in part only connected with the illegal transaction and growing immediately out of it, though it be in fact a new contract, it is equally tainted by it." The question now is, does the contract between these parties come within these principles?

The original contract had no reference to any illegal act; nor was it shown that any law was violated, or any injury done to the service of the United States, by the false representations made by the plaintiff. The act of congress, by virtue of which the defendant was drafted, (*Acts of* 1864, *p.* 7,) provides that any person drafted may, before the time fixed for his appearance for duty at the draft rendezvous, furnish an acceptable substitute, subject to such rules and regulations as should be prescribed by the secretary of war; and that if such substitute is not liable to draft, the person furnishing him should be exempt from draft during the time for which such substitute is not liable to draft. Had it appeared that the plaintiff was in fact himself subject to draft during the two years, there would have been such a violation of the law as might have rendered the contract between these parties illegal, and been a bar to any recovery on it.. But such was not the fact; nor does he appear to have been accepted as a substitute in violation of any law. It was not shown, either, that he was accepted in violation of any rules prescribed by the secretary of war. The court could not take judicial notice of these rules, and no evidence was produced of their nature. It might be conjectured, perhaps, that they directed the officers to receive only such as were older and of greater height than the plaintiff. But it cannot be assumed, that if such were the rules, that they were so peremptory as to render an enrollment contrary to them null and void. It satisfactorily appears that the plaintiff was capable of performing full military duty, and actually did perform it, so as to be elevated to the rank of a non-commissioned officer. He was, to all intents and purposes, "an acceptable substitute," of whose services the defendant and the government had the full benefit. It was held in the case of *Richardson*

v. *Mellish,* 2 *Bing.* 229, that a doubtful matter of public policy is not sufficient to invalidate a contract; an agreement is not void on this ground, unless it expressly and unquestionably contravenes public policy, and be manifestly injurious to the interests of the state. In my opinion, the contract between these parties was not so tainted with illegality or fraud as to be invalid, but was one which may be properly enforced.

Secondly, it was urged as a sufficient ground for a new trial that the defendant has discovered new and important documentary and other evidence, not in his power at the trial, and that an important witness, whose testimony could not then be produced, has since returned to his residence in New York. The newly discovered evidence is the testimony of William M. Shipman, the provost marshal who examined and enlisted the plaintiff, and the documents connected with the enlistment, on file at Philadelphia, in an office now designated by defendant's witness, who procured copies, as "the mustering and distributing office of the United States government, in charge of Capt. John Elliot."

The well established rule on this subject is, that if the new evidence might, with ordinary diligence, have been discovered previous to the trial, a new trial will not be granted. *Deacon* v. *Allen,* 1 *South.* 343; *Sheppard* v. *Sheppard,* 5 *Halst.* 254. The remark made by the judge in delivering the opinion of the court in the last named case may be applied with equal propriety to this case. "It was certainly a gross neglect of the defendant not to inquire the circumstances of the case from this man, (Shipman) who obviously knew all about them, till after the trial was over." Shipman resided in the same county with the defendant, and could have informed him where the documents connected with the enlistment were kept.

In regard to the witness in New York, we have no proof that his evidence will be such as the defendant expects. In the case of *Sheppard* v. *Sheppard,* evidence was produced of what the witness had been heard to say; but the court said

that was not sufficient: facts newly discovered ought to be laid before the court in the shape of legal evidence, and not hearsay. In this case, we have not even hearsay, but only an expectation that the witness, when produced, will say something material. It is alleged that the defendant could not procure the attendance of the witness before a commissioner in this state; but if that be so, and if his testimony could not be procured at all under the existing laws, which I am not willing to admit, it is the defendant's misfortune. In my opinion, the rule to show cause must be discharged. Rule discharged.

CITED *in Hawthorne* v. *Hoboken*, 6 *Vr.* 254.