EFFINGER J. RUBRIGHT, PROSECUTOR, v. CIVIL SERVICE COMMISSION OF THE STATE OF NEW JERSEY, DEFENDANT.

Submitted January 20, 1948—Decided May 7, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutor, *Charles E. McCraith, Jr.*

For the defendant, *Walter D. Van Riper,* Attorney-General, and *John W. Griggs,* Deputy Attorney-General.

The opinion of the court was delivered by

HEHER, J. *Certiorari* was granted to review these proceedings of the State Civil Service Commission:

On September 10th, 1947, the defendant Commission determined that prosecutor's permanent state civil service status, as of November 16th, 1946, was that of an "Employment Counselor, Grade III" in the State Employment Service, a division of the Unemployment Compensation Commission, with an annual salary range of $2,400 and $3,000, and his "temporary status" that of a "Title Occupational Analyst," with a salary range of $3,000 and $3,600, the latter "title" held "subject to promotional examination;" and the point at issue is whether, in virtue of the combined operation of chapter 386 of the laws of 1941 (*Pamph. L., p.* 1000; *N. J. S. A.,* §§ 43:21–12.1, *et seq.*), chapter 162 and chapter 171 of the laws of 1943 (*Pamph. L., pp.* 472, 491; *N. J. S. A.,* §§ 43:21–12.3, *et seq.*), and chapter 65 of the laws of 1944 (*Pamph. L., p.* 125; *N. J. S. A.,* §§ 11:5–1, 11:7–10), he is "entitled to be treated as an employee" of the state, "albeit *in absentia,* during the years 1942 to 1946," when the personnel of the State Employment Service was "on temporary loan" to the federal government under chapter 386 of the laws of 1941, cited *supra,* and "therefore entitled to the benefits of the reclassification program" adopted pursuant to chapter 162 of the laws of 1943 and chapter 65 of the laws of 1944, cited *supra,* rather than subject to the general requirement of promotion by competitive examination.

The cited determination of prosecutor's status was comprised in the defendant Civil Service Commission's "survey and classification of United States Employment Service personnel transferred to the State Service," and his annual salary was therein fixed at $3,720, as of November 16th, 1946;

and it was further therein provided that the "temporary title will be discontinued upon completion of the current reorganization of the Employment Service Division of the U. C. C., and no examination will be held for this title," but prosecutor "will have opportunity to compete in the examinations, to be announced shortly, in the same manner and on the same basis as all other transferred U. S. E. S. personnel."

In 1938, following a competitive examination, prosecutor was appointed to the position of "Senior Employment Interviewer" in the State Employment Service; and on December 29th, 1941, after qualifying in a competitive examination, he was advanced to the position of "Employment Counselor." Three days later, while he was merely a probationer "in training" for his new position, the records, facilities and personnel of the State Employment Service Division were transferred to the federal government pursuant to chapter 386 of the laws of 1941, cited *supra*. On November 16th, 1946, the federal service was terminated, and the records, facilities, and personnel of the State Employment Service Division thus on temporary leave, prosecutor among them, were returned to the state service. *Vide* 60 *U. S. Stat.* 684; 29 *U. S. C. A.*, § 49c. Prosecutor's then title in the federal administrative bureau was "Senior Occupational Analyst," and his salary was $3,840. He entered the government service as an "Employment Counselor" at the same annual salary as that of a probationer of that class in the state's service at the time, $2,160. Four or five months later, the federal bureau to which he was assigned changed his title to "Junior Occupational Analyst," and his salary was increased to $2,400, and thereafter there were further increases, all without the participation or acquiescence of the state.

On September 15th, 1947, the Civil Service Commission scheduled competitive examinations for positions in the re-established Employment Service Division; and this action and the cited determination of his civil service status are challenged as in contravention of the statutory policy. In a word, the insistence is that prosecutor's permanent title of "Employment Counselor, Grade III" is inferior in rank and grade to the position of "Employment Counselor" which he

held in 1941, primarily because of a difference in the salary *minima,* although some diversity of duty is asserted, and so he has suffered a demotion, and that his enforced participation in competitive examinations with clerical employees of the Unemployment Compensation Commission of inferior and subordinate rank, in order to retain his current status, is in disregard of the rights which he acquired under the Reclassification Act and kindred statutes cited *supra.*

The essence of the point made is that prosecutor "continued to be a civil service employee" of the state "while on loan to the federal government;" and that the civil servants of the State's Employment Service Division "are entitled to the benefits of the reclassification program," and he should not be obliged "to compete for a title equivalent to that which he had acquired in 1941." He insists that a "duties questionnaire" submitted by him to the State Civil Service Commission in 1947 indicates the performance of the functions of a "Senior Occupational Analyst," the position held under the federal government at the time of his return to state service, and that proper classification requires that he be given a permanent appointment as "Employment Counselor, Grade II," which he deems to be the equivalent in rank of "Occupational Analyst." In fine, he asserts the right "to be reclassified, without examination, under a title appropriate to duties actually performed upon his return" from federal service, "a benefit accorded all other employees" of the state, "except the personnel of the Employment Service Division."

It is said that in this regard a distinction is to be made between the personnel of the Unemployment Compensation Commission and the staff of the Employment Service Division, and that the defendant Civil Service Commission, erroneously proceeding on the contrary hypothesis, although there was no finding that a departmental separation was not practicable, ruled that the personnel of the Unemployment Compensation Commission is "entitled to compete for superior titles and positions within the Employment Service Division," thus ignoring chapter 203 and chapter 308 of the laws of 1945 (*Pamph. L., pp.* 698, 891; *N. J. S. A.,* § 43:21–10c), providing that the State Employment Service shall be "a sepa-

rate administrative unit with respect to personnel, budget, and duties, except in so far as the commission may find such separation to be impracticable."

The judicial function is to confine the administrative agency within the limits of its statutory domain; the judicial authority may not substitute its judgment for that of the agency where there has been no deviation from its allotted sphere of action. *Higgins* v. *Civil Service Commission,* 135 *N. J. L.* 238.

The Reclassification Act was not disregarded in the action thus taken by the Civil Service Commission. The reclassification authorized and approved by the legislature was not inclusive of the personnel of the Employment Service Division for the time being under the "absolute jurisdiction and control" of the federal government. Chapter 386 of the laws of 1941, *supra,* provides for the transfer of absolute jurisdiction. These civil servants were not comprised within either the classification incorporated in the report to the legislature made by the legislative commission constituted by chapter 162 of the laws of 1943, *supra,* or the adoptive action taken by the Civil Service Commission pursuant to the mandate of chapter 65 of the laws of 1944, *supra.* The legislative design was a "study of the personnel employed by the various state departments, boards, commissions and agencies and their duties and compensation," with a view to the "equalization of compensation for the performance of similar duties and the payment of salaries commensurate with the work performed" (chapter 162 of the laws of 1943, *supra*) ; and those assigned to federal service pursuant to the Act of 1941 were not deemed employees of the state or a department thereof within the sense and significance of the reclassification acts. The legislature itself directed the Civil Service Commission to "adopt * * * the classification and compensation plan incorporated" in the report made by the legislative commission. within ten days after its submission to the legislature; and the Commission was empowered. "after the installation of such plan" by its chief examiner and secretary, "to approve, modify or reject, after public hearing, such classification and compensation plans for the classified service, or a part thereof,

together with rules for their administration, as may be presented by the chief examiner and secretary after a thorough survey of the personnel and departmental organization included in such plans," and generally to effectuate the provisions of that subtitle as thereby amended. Chapter 65 of the laws of 1944, *supra*. Those in the stated category were compensated for their labors by the federal government; and they were not, while in federal service, also employees of the state, in the classified service, within statutory intendment. The statute presupposed unintermitted service with all essential departmental service and other records available for the exercise of the reclassification function. The workers thus assigned were not subject to state control; and promotions while under the federal assignment were made without competitive or other qualifying examinations.

Chapter 171 of the laws of 1943, *supra,* does not serve prosecutor in this regard. This statute saves the "civil service, pension or other rights, including rights to promotion and to increase in remuneration" of one whose services were so made available to the federal government, and such promotion or increase in remuneration as he may have received while in such federal service, provided the Civil Service Commission "shall find, upon an examination and survey of the law and procedures applied and used in determining and setting up such advance in position and remuneration, that the individual would have been entitled under state law and procedures to acquire, hold and enjoy such advance in position and remuneration against all other individuals interested or concerned." The Civil Service Commission found, after due inquiry, that the promotions and pay increases accorded prosecutor while in federal service were not in conformance with the standards, procedures and practices under state law, entitling him to hold such advances against all others "interested or concerned;" and this exercise of administrative discretion is not fairly classable as arbitrary or capricious, and is therefore not subject to judicial action. The promotions while in federal service were not grounded in comparative merit and fitness revealed by competitive examinations or otherwise sanctioned by state law; and under all the circum-

stances it was within the province of the Civil Service Commission, in the execution of the statutory policy, to give to prosecutor the rank in the state classified service which he held at the time of his induction into federal service. This the Commission did. The proofs do not sustain the contention that the position thus permanently assigned to him is inferior in rank and grade to that held by him at the time of his transfer to federal service. That, too, called for the exercise of a measure of administrative judgment. The recognition of the demand now made plainly would disregard the letter and spirit of the statute.

The evident purpose of the proviso was to safeguard the state's civil service policy against external interference. The function of a proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of its misinterpretation, as extending to cases not intended by the legislature to be brought within its purview. *New Jersey State Board of Optometrists* v. *S. S. Kresge Co.,* 113 *N. J. L.* 287; *affirmed,* 115 *Id.* 495.

And there is no substance to the contention that promotional examinations should be confined to the personnel of the Employment Service Division itself. The statute of 1945 merely provides for divisional administrative unity within the Unemployment Compensation agency, unless such "separation" be found impracticable; but this has no relation whatever to the administration of the civil service laws. There is no indication of a purpose thus to modify the statutory civil service policy. Such a design cannot be left to doubtful implication; it is not to be accepted unless expressed in clear and indubitable language. The Employment Service is nevertheless but a division or department of the Unemployment Compensation Bureau.

The writ is dismissed, with costs.