162 N.J. Super. 1 (1978)
392 A.2d 187
CITY OF HACKENSACK, APPELLANT AND CROSS-RESPONDENT,
v.
RICHARD WINNER, NICHOLAS SARAPUCHIELLO, WILLIAM KREJSA, RESPONDENTS, AND THE PUBLIC EMPLOYMENT RELATIONS COMMISSION, RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 1978.
Reargued May 9, 1978.
Decided July 31, 1978.
*6 Before Judges LYNCH, KOLE and PETRELLA.
Mr. James P. Granello argued the cause for appellant and cross-respondent (Messrs. Murray, Meagher & Granello, attorneys; Mr. Robert Emmet Murray, Mr. Robert J. Hrebek and Mr. John Paul Dizzia on the briefs).
Mr. David Solomon argued the cause for respondents Sarapuchiello and Krejsa (Messrs. Schneider, Cohen & Solomon, attorneys).
Mr. Sidney H. Lehmann, General Counsel, Public Employment Relations Commission, argued the cause for respondent and cross-appellant (Mr. Don Horowitz on the brief).
Mrs. Erminie L. Conley, Deputy Attorney General, argued the cause for amicus curiae Civil Service Commission (Mr. John J. Degnan, Attorney General of New Jersey, attorney for amicus curiae Civil Service Commission; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by PETRELLA, J.S.C. (temporarily assigned).
This is an appeal from an unfair labor practice decision of the Public Employment Relations Commission (PERC) that the City of Hackensack violated N.J.S.A. 34:13A-5.4a(1) and (3) (essentially for anti-union animus) in failing to promote two fire fighters, respondents Nicholas Sarapuchiello and William Krejsa (hereinafter sometimes referred to as the charging parties), to the position of fire lieutenant in Hackensack. PERC ordered Hackensack to offer those two employees promotions to the rank of fire lieutenant with back pay, notwithstanding that the Civil Service hearing officer and the Civil Service Commission (Civil Service) had previously determined that there had been no violation of law or bad faith, including anti-union animus, involved. Certain other individuals (not parties to this appeal) were *7 thereafter promoted to the only fire lieutenant positions then open. PERC also ordered Hackensack to (1) cease and desist from such unfair practices, (2) post a notice to employees prepared by PERC, and (3) preserve payroll records and follow its guidelines for computations of earnings due the charging parties. Hackensack appealed pursuant to R. 2:2-3(a) (2).
On this appeal Hackensack takes the position that the determination by Civil Service that there was no violation of law and no anti-union animus is binding on the parties and precludes PERC from entertaining the matter. It also raises certain other challenges to PERC's jurisdiction, including an attack on the impartiality of PERC due to the makeup of the Commission.
PERC ruled adversely to fire fighter Winner who is not referred to as a charging party herein because he did not appeal. PERC "cross-appealed",[1] seeking an order enforcing its determination.
In response to the "cross-appeal" Hackensack denies PERC's power to order promotions, award back pay, and to enter an order not limited to the charging parties.
This case involves the interaction and interpretation of Civil Service and PERC statutes and the effect of diametrically opposed factual determinations by two state agencies following hearings in which the same parties and attorneys participated and there was a similarity of witnesses and testimony.
In view of the significance of the case, and possible implications in future cases involving other state departments and *8 agencies, we called for reargument. We also invited the Attorney General to file a brief as amicus curiae on behalf of Civil Service, and called for supplemental briefs on the effect, if any, on and of Title 11, "Civil Service," in view of the constitutional mandate relating to appointments and promotions in the civil service of the State and its subdivisions (N.J. Const. (1947), Art. VII, § I, par. 2); whether the concept of "good faith" under Civil Service laws included anti-union animus; the effect and meaning of the reservation in N.J.S.A. 34:13A-5.3 of Civil Service rights; the legislative history bearing on the "exclusive power" provision regarding unfair labor practices in the public sector, and the authority of PERC in reference to remedies if PERC has exclusive jurisdiction.
The record of the hearings before the Civil Service hearing officer and the PERC hearing examiner have been submitted to us in connection with this appeal. Hackensack argues that the issue of anti-union animus was heard and decided by Civil Service as well as PERC. The charging parties assert that only Civil Service matters were heard in that forum and the issues were kept separate and apart, and even if heard in both forums, PERC had the "exclusive power" (N.J.S.A. 34:13A-5.4c) to hear that issue, notwithstanding the finding by the Civil Service hearing officer that the failure to promote the charging parties was not due to discrimination because of union activities. Although not technically a party, PERC has advocated the position of the charging parties on this appeal.
We are called upon to determine whether Civil Service actually heard and decided the issue, and, if so, whether PERC has exclusive jurisdiction as to unfair labor practice matters such as would preclude Civil Service from considering the issue even if presented by the public employees in the classified service. A subsidiary issue is the effect, if any, of the first decision by one state agency on the subsequent decision of the other agency, and whether res judicata, collateral estoppel, or perhaps the single controversy doctrine, *9 or even an election of remedies could or should be conclusive on the parties and the second agency, as to the facts as they existed at the time of the hearing in the circumstances of this case.
The record discloses that the charging parties were on an April 10, 1974 promotional list for fire lieutenant in Hackensack. Following competitive examinations Krejsa was certified as number four and Sarapuchiello number six on the list.[2] On or about February 12, 1975 individuals ranked one, two, five, seven and eight on the certification list were promoted when Hackensack invoked the "one out of three"[3] rule (see N.J.A.C. 4:1-12.15(a)(3)) in making the appointments.
On or about February 13, 1975 the two charging parties requested Civil Service review of the decision bypassing them in promotions. On or about February 18, 1975 unfair practice complaints were filed with PERC by fire fighter Winner and the charging parties. The three complaints were consolidated by PERC.
On April 30, 1975 Civil Service preliminarily determined in an administrative review that Hackensack had not violated Civil Service laws and rules in bypassing the two charging parties in selecting from among the names certified. Further appeal was taken to the Civil Service Commission.
*10 About the time that Civil Service was requested to hear those appeals, a complaint and notice of hearing was issued by PERC in June 1975. Hackensack moved to dismiss on the ground that the matter was before Civil Service. The PERC hearing examiner denied the motion, and Hackensack requested special permission to appeal the ruling before PERC. Permission was denied without ruling on the merits.
The Civil Service and PERC hearings were conducted almost in tandem and, as noted, with the same attorneys and virtually identical witnesses testifying as to events and occurrences in somewhat varying detail.[4] On February 19, 1976 the Civil Service hearing officer issued his report and recommendation to the Commission. He found that the charging parties had failed to prove that they were not promoted because of any prejudice or because of any union activity of those individuals.[5] Exceptions were filed on behalf *11 of the charging parties who then, and for the first time, took the express position that the question of unfair labor practices had not been litigated before the Civil Service hearing officer and that PERC had exclusive jurisdiction.
The Civil Service Commission accepted and adopted the findings of fact and conclusions contained in the hearing officer's report and recommendations in its April 20, 1976 decision (issued May 20, 1976). None of the exceptions of the charging parties were adopted and they did not appeal from that final Civil Service decision and order. There being no further appeals, the individuals appointed by Hackensack were certified by Civil Service in the positions of fire lieutenant.[6] No stay was sought of that action.
*12 On July 12, 1976 the PERC hearing examiner issued his recommended report and decision finding that Hackensack's failure to promote the two charging parties was due to violations of N.J.S.A. 34:13A-5.4(a)(1) and (3). The skipping of Richard Winner was sustained and he did not appeal that determination. Hackensack submitted exceptions to the PERC hearing examiner's report, and again urged that the matter had been resolved by Civil Service. On March 17, 1977 PERC issued its final decision and order adopting and accepting the report and decision of its hearing examiner in all respects pertinent to the matter before us.

I
In view of the contentions of the parties as to what transpired in the two proceedings we deem it appropriate to review and compare the record of the hearings even though no appeal was taken by the charging parties from the Civil Service determination. Cf. Knutsen v. Brown, 96 N.J. Super. 229, 234-237 (App. Div. 1967).
In the Civil Service hearing there was no statement or hint at any time before or during the hearing that it was even the intention of the charging parties to keep any issue of discrimination because of union activities exclusively before PERC. Indeed, the opening statement of their attorney was quite general and referred not only to the active membership of the charging parties in the union, but asserted that the motivation for skipping the charging parties was that they "took advantage of various rights under statutes or under Civil Service, pressing many complaints against the Appointing Authority" in their positions as *13 union officers. However, except for various inquiries to Civil Service as to the status of promotions after the eligibility list for fire lieutenant was promulgated on April 10, 1974 and complaints of delay in making the promotions, the record before the Civil Service hearing officer is virtually barren of complaints to Civil Service.
The testimony in both hearings clearly was to the effect that the charging parties were active members of the union representing the fire fighters and participated vigorously and to varying extents in the contract negotiations which preceded the contested promotions.
Except as noted the following review includes testimony common to both hearings. It was stipulated and undisputed that from the time of adoption by Hackensack in 1947 of the civil service system, the first use in the fire department of the "one out of three" rule was in connection with the February 1975 promotions. Both hearings were replete with testimony concerning the performance of the charging parties of their duties, their conduct and attitude, the institution of a fire patrol in Hackensack and opposition thereto by the union and the charging parties, lack of so-called initiated action by the charging parties on fire patrol, as well as certain instances of disciplinary charges against them. Sarapuchiello had objected strongly to the fire patrols in which on-duty firemen were to ride in automobiles around areas of the city and note and report violation of fire laws.
It was testified in both hearings that no formal written evaluation of fire fighters was made prior to the promotions. Other than the fire safety patrol, the charging parties had generally been considered to have performed their duties satisfactorily (on what was later referred to as a scale of poor to excellent) and had served as acting lieutenants. The fire chief testified to their unsuitability to assume permanent command positions at this time. The fire chief admitted (as others had also testified in both hearings) that during the contract negotiations in 1974 he had issued an order to the effect that union officers would not be permitted to *14 serve as acting lieutenants henceforth. He felt it was a "conflict of interest." (Compare N.J.S.A. 34:13A-3(c), (d) and (f) and N.J.S.A. 34:13A-5.3).
Fire Lieutenant Kearney[7] testified on behalf of the charging parties in both hearings that the city manager was upset because of discipline and problems with union negotiations. He testified that at a December 1973 meeting the city manager indicated the list would not be observed and that he would skip on the promotion list. He also testified that the deputy chief had told him after the promotions that the chief said that there should be a check of the personnel file to see if the deputy chief could find reasons not to promote the charging parties. (This was denied by Hackensack's witnesses).
The attorney for the charging parties called the fire chief as their witness in each hearing. On direct examination in the Civil Service hearing he asked the chief if he knew Krejsa was a union officer, and if he knew complaints were made to Civil Service by Sarapuchiello while he was union president. The chief knew the charging parties held office in the union, but stated he was not really sure they were responsible for registering complaints. There was also testimony that two active union men were among those promoted to lieutenant when the charging parties were skipped.
On the city's case before Civil Service the chief testified that the fact that Krejsa and Sarapuchiello were active in the union did not affect his decision that Krejsa should not be promoted at this time. On cross-examination the attorney for the charging parties asked if the city manager had instructed that Krejsa and Sarapuchiello not be promoted *15 because they held union office. The chief denied this and asserted the city manager could not so instruct him. The attorney for the charging parties then inquired:
Q. And did that consideration of the office holding of either Krejsa or Sarapuchiello enter at least appreciably into your decision not to promote them?
A. Not a bit.
Testimony was presented by Hackensack in each hearing that fire fighter Sarapuchiello had made a derogatory statement about all officers while union president. A deputy chief testified that Sarapuchiello told him in the presence of Lt. Kearney and others that he would refuse to sign a contract as long as it contained a clause or provision for a fire safety patrol, and said all officers were "scum bags." Although Lt. Kearney testified he did not recollect this statement, it was not denied by that charging party in either hearing.
Both hearings produced testimony concerning a disciplinary action against one of the charging parties, then a union officer involved in negotiations with the city, based on a fire department regulation against making statements to members of the press. It was overturned in a court challenge.
The attorney for the fire fighters in the Civil Service hearing also questioned a superior officer about whether it was improper for an officer of a labor organization to discuss terms and conditions of employment with union members, and whether membership in fraternal-type organizations could be used as a basis for denial of promotions in addition to enumerated statutory grounds, including race and creed.
The testimony before the PERC hearing examiner in some instances amplified that before Civil Service, and included additional testimony of:
(1) A conversation following a Memorial Day parade in which Sarapuchiello asserted that the fire chief said that no union officer would be promoted to lieutenant. He also testified he disbanded his "negotiating team" after the negotiations were complete and then resigned from office due to that statement.
*16 (2) Krejsa testified that he was seen picketing by city officials. He also said he resigned as a state delegate on January 7, 1975 (after the contract negotiations were complete) because he was removed as an acting lieutenant.
(3) A Mr. Volpe, a friend of the charging parties not employed by the fire department, asked to meet with the city manager about the delay in promotions. He said the city manager at the meeting said some of the picket signs used in the job action were distasteful, and that he had a dislike for unions. Although all of this was denied on the city's case, he also indicated that the chief at that meeting called some union officers (including the charging parties) the main troublemakers.
(4) Another fire fighter, the union president at the time of the hearing, testified about an incident involving Winner going as an individual (and not with union approval) before the governing body to support a change in government. However, because the PERC proceeding was determined adversely to Winner, and he did not testify before Civil Service, this would not seem significant.
(5) Winner testified about asking the fire chief in a telephone conversation why there was a delay in the certification of Civil Service, and being told to be patient. He testified he asked if it might be a good thing to make an official complaint and was told, "If you rock the boat I'll rock your boat harder." He also testified he was seen by certain government officials and superiors while on picket duty (outside the city hall-fire headquarters complex).
We do not consider such additional items of testimony to be so significant as to indicate that active union membership and its effect, if any, were inadequately or unfairly presented before Civil Service, even taking into account certain procedural evidence objections. In any event, nothing prevented introduction of any of such testimony before the Civil Service hearing officer.
The PERC hearing examiner found discrimination by Hackensack on the basis of union activity by the charging *17 parties, and applied alternative tests of whether the discrimination he found was either "one of the motivating factors" or "inherently destructive of employee rights." In applying them he found unfair practices under both tests of two subparagraphs of the statute. He also found that there was no evidence to support charges alleging unfair practice violations of subparagraphs (4), (5) and (7) of N.J.S.A. 34:13A-5.4(a) and dismissed those charges. He also found that a special order that superior officers[8] could not be union members had a "chilling effect" on employee rights.
The hearing examiner also found that the failure to promote fire fighter Winner was not attributable to such discrimination. His findings noted that Winner had been on extended sick leave for treatment of an apparent psychological or emotional problem.
The Attorney General takes the position that by virtue of the constitutional and statutory provisions Civil Service has concurrent jurisdiction, and that although a determination of one state agency should be binding on another or recognized on principles of comity, this question need not be decided if Civil Service did not try the issue of anti-union animus. The question is, however, whether the record supports that premise. At oral argument the Attorney General conceded that a fair reading of the transcript of the Civil Service hearing would support the clear inference that it was the union activity of the charging parties that was the focus of the dispute.
We have carefully reviewed the record of the proceedings before both PERC and Civil Service. It is clear therefrom that despite the claim here that only prejudice because of *18 various complaints or prosecutions of Civil Service matters was submitted to the Civil Service hearing officer, in actuality, despite any other descriptive language, the issue of the impact of the union membership and activities of the charging parties as affecting their being skipped on the promotional list was a significant part of what was actually presented to the hearing officer.
The argument that the issue of union activity and participation and alleged anti-union animus was kept out of the Civil Service hearing cannot be supported by a common sense reading of the record. Indeed, if that was not what was really being presented, notwithstanding absence of precise descriptive labels, we would be hard pressed to determine any substantial basis for the appeal to Civil Service. Certainly it could not have been solely impatience with the delay in the promotional procedures. The clear inference from the testimony presented by the fire fighters before the Civil Service hearing officer was to the effect that the charging parties were complaining of bias allegedly due to their union activity and participation, and the allegation that such bias resulted in Hackensack skipping them.

II
The charging parties and PERC argue that PERC's jurisdiction is "exclusive" as to "unfair practices", and that in any event it has the authority to enter a broad remedial order, and Civil Service has been ousted from any jurisdiction over "unfair practices"[9] which has been held to refer to unfair labor practices. See Patrolman's Benevolent Ass'n v. Montclair, 70 N.J. 130, 136 (1976). PERC argues that the Civil Service jurisdiction is now limited to N.J.S.A. 11:17-1 by virtue of the "exclusive power" language of N.J.S.A. 34:13A-5.4(c).
*19 Enactment of the New Jersey Employer-Employee Relations Act (PEERA) (N.J.S.A. 34:13A-1 et seq.) by L. 1968, c. 303, did not include unfair labor practice jurisdiction in PERC. See Burlington Cty. Evergreen Park Mental Hosp. v. Cooper, 56 N.J. 579 (1970). Such jurisdiction was added by amendment to N.J.S.A. 34:13A-5.4 when L. 1974, c. 123 was adopted, effective January 19, 1975.
The PEERA gave statutory form to the constitutional provision concerning the right of persons in public employment "to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing." N.J. Const. (1947), Art. I par. 19.
Nevertheless, N.J.S.A. 34:13A-5.3 specifically preserves all rights under Civil Service laws and regulations in the following language:
* * * Nothing herein shall be construed to deny to any individual employee his rights under Civil Service laws or regulations * * *.
In determining the interrelationship of the two sets of statutes, we first note that the N.J. Const. (1947), Art. VII, § I, par. 2 provides:
Appointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit, and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; except that preference in appointment by reason of active service in ... the military ... may be provided by law.
Title 11 is the statutory implementation of this constitutional provision. See State Troopers Fraternal Ass'n v. State, 115 N.J. Super. 503 (Ch. Div. 1971), aff'd 119 N.J. Super. 375 (App. Div. 1972), aff'd 62 N.J. 302 (1973). Civil Service was given broad powers to determine merit and fitness in connection with appointments and promotions. See Rubright v. Civil Service Comm'n, 137 N.J.L. 369, 374-375 (Sup. Ct. 1948), and 2 Proceedings of the Constitutional *20 Convention of 1947, at 1126 (Report of the Committee on Executive, Military and Civil Officers); Id. at 1465 (Carpenter, "Civil Service  The Personnel Article in the State Constitution").
Under Civil Service Law and cases interpreting it, Civil Service has full authority to inquire into the bases for appointments and promotions in the civil service of the State, N.J.S.A. 11:4-1 and 2, and of local jurisdictions. N.J.S.A. 11:21-1. It has responsibility in deciding promotional appointment appeals to inquire and determine if the appointing authority arbitrarily or improperly exercised discretion in a manner not consonant with merit and fitness principles. See Mason v. Civil Service Comm'n, 51 N.J. 115, 126-127 (1968). It would be contrary to the responsibility of Civil Service for insuring merit and fitness in public employment to require appointment where an individual might be unfit. Cf. Tischler v. Bd. of Ed., 37 App. Div.2d 261, 323 N.Y.S.2d 508, 513 (App. Div. 1971).
N.J.S.A. 11:1-7(d) gives Civil Service power to enforce the act and rules and regulations thereunder. N.J.S.A. 11:6-2(e) gives it broad authority over all personnel procedures in the classified service.[10]
*21 In Walsh v. Civil Service Dept., 32 N.J. Super. 39, 43 (App. Div. 1954), certif. granted, 17 N.J. 182 (1955) (appeal subsequently dismissed in 1955 on motion), we indicated that to effectuate the broad statutory public policy of Civil Service statutes, the widest possible scope consistent with a fair and reasonable interpretation of the language employed therein should be given the Civil Service Act.
Civil Service under its authority, including the broad ambit of "good faith," can inquire into many aspects of the motivation of an appointing authority. See, e.g., Cunningham v. Civil Service Dept., 69 N.J. 13, 18 (1975) (alleged malevolent plan to demote employee); Burlington Cty. Evergreen Park Mental Hosp. v. Cooper, supra, 56 N.J. at 583-584 (as to unfair labor practices and constitutional rights); Weaver v. Civil Service Dep't, 6 N.J. 553, 558-559 (1951) (dismissal due to political affiliations is not good faith); Newark v. Civil Service Comm'n, 112 N.J.L. 571, 574-575 (Sup. Ct. 1934), aff'd 114 N.J.L. 185 (E. & A. 1935) (breach of good faith to circumvent statutory mandate by design); Pros., Det., Essex Cty. v. Hudson Bd. of Freeholders, 130 N.J. Super. 30, 46-47 (App. Div.), certif. den., 66 N.J. 330 (1974); Sogliuzzo v. Hoboken, 62 N.J. Super. 243, 250 (App. Div. 1960) (where promotion could not be voided merely because promotee who passed competitive exam was relative of appointing authority), and Schnipper v. North Bergen Tp., 13 N.J. Super. 11, 15 (App. Div. 1951). It is broad enough to encompass the dispute between these parties in this case.
The Legislature, although given a constitutional mandate to implement merit and fitness provisions in the civil service of the State and its political subdivisions, may do so in such appropriate manner as it sees fit.[11] However, considering the broad statutory scheme established by the Legislature *22 concerning merit and fitness in public service, any departure from the long-established implementation thereof by divesting Civil Service of such jurisdiction or any part thereof concerning promotional appointments[12] in the classified service must be shown by a clear legislative expression of intent. See Union Beach Bd. of Ed. v. N.J. Ed. Ass'n, 53 N.J. 29, 46 (1968); cf., Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Secretaries, 149 N.J. Super. 346, 352 (App. Div.), certif. granted 75 N.J. 29 (1977) and Burlington Cty. Evergreen Park Mental Hosp. v. Cooper, supra, 56 N.J. at 592-599.
Even the use of the phrase "exclusive power,"[13] in the context of the entire language of the various provisions of the PEERA and the Civil Service statute, does not appear dispositive. See In re Hoboken Teacher's Ass'n, 147 N.J. Super. 240, 243-249 (App. Div. 1977). As noted in Aircraft *23 & Diesel Equip Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947):
The very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceedings. [331 U.S. at 767, 67 S.Ct. at 1501, 91 L.Ed. at 1806]
The PEERA, with the most recent amendments with respect to unfair practice jurisdiction, does not evince such a clear intent to divest Civil Service of jurisdiction, particularly in light of the quoted civil service reservation in N.J.S.A. 34:13A-5.3. We have considered the entire legislative history available concerning the statute and find it not conclusive on the issue before us. In Lullo v. Intern'l Ass'n of Fire Fighters, 55 N.J. 409 (1970), the Supreme Court said:
It is crystal clear that in using the term "collective negotiations" the Legislature intended to recognize inherent limitations on the bargaining power of public employer and employee. The reservation in section 7 [N.J.S.A. 34:13A-5.3] of the Civil Service rights of the individual employee is a specific indication of that fact. The law-makers were sensitive that Civil Service statutes in many areas provide for competitive employment examinations, eligible lists, fixed salary lists, for promotion, transfer, reinstatement and removal, and require all employees to be dealt with on the same basis. [at 440]
The inquiry is properly not so much which statutory scheme prevails in the context of merit promotions, but rather how each can be harmonized to give them reasonable and full effect. See Gilchrist v. Haddonfield Bd. of Ed., 155 N.J. Super. 358, 366 (App. Div. 1978) (Commissioner of Education and Director of Division of Civil Rights held to have concurrent jurisdiction); Red Bank Bd. of Ed. v. Warrington, 138 N.J. Super. 564, 571-572 (App. Div. 1976); Pros., Det. Essex Cty. v. Hudson Bd. of Freeholders, supra, 130 N.J. Super. at 46, and Newark v. Civil Service Comm'n, *24 supra, 112 N.J.L. at 573-574. See also, Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Each agency operates under different statutory schemes, but not to defeat each other's authority. PERC concedes that it could not order a promotion where the applicant was not otherwise qualified as to merit and fitness. Any remedy ordered by PERC could not be inconsistent with the other agency's jurisdiction. For instance, if a promotional list had expired, or if the party was not otherwise qualified, or if there were no budgeted vacancy, an affirmative promotion order by PERC would not seem appropriate.
In light of the foregoing we conclude that Civil Service retains jurisdiction to hear claims of discrimination or bias based on anti-union animus. Here, that jurisdiction was concurrent with PERC, and was properly exercised by Civil Service upon the filing of the complaint there, and the prosecution of that matter to completion by the charging parties prior to any determination by the PERC hearing examiner or PERC.

III
Having concluded that regardless of labels employed there was (at least between Hackensack and the two charging parties here) identity of parties and the same issue being tried, and that both PERC and Civil Service had concurrent jurisdiction, we consider the legal result in the context of the present appeal.
It is clear that principles such as res judicata and collateral estoppel now apply not only to parties in courts of law, but also in administrative tribunals and agency hearings, particularly as to findings of fact. See U.S. v. Utah Constr. & Mining Co., 384 U.S. 394, 418-422, 86 S.Ct. 1545, 1558-1560, 16 L.Ed.2d 642, 659-661 (1966); Lubliner v. Paterson Bd. of Alcoholic Control, 33 N.J. 428, 442 (1960); Russell v. Tenafly Bd. of Adj., 31 N.J. 58 *25 (1959); Cunningham v. Civil Service Dept., 69 N.J. 13, 18 (1975); 2 Davis, Administrative Law, §§ 18.02 to 18.05, § 18.12 (1958); and 2 Cooper, State Administrative Law, at 503 (1965).
PERC's brief concedes that doctrines such as res judicata, collateral estoppel and the "entire controversy" rule apply in administrative proceedings. It argues, however, that such a doctrine should not be applied against it to deprive it of jurisdiction in this case. PERC's position misconstrues the application of those principles. It is not a party in the sense of being an adversary or advocate. N.J.S.A. 34:13A-5.4(c). Compare 2 Am.Jur.2d, Administrative Law, § 497 at 308. Generally, these doctrines are not applied against a court or an administrative body, but rather are applied most appropriately to a party[14] to prevent wasteful and unnecessary fragmentation of causes of action and duplication of proceedings.
The doctrine of res judicata in administrative law has had insufficient systematic consideration by the courts, especially those which in rejecting a claim of res judicata take refuge in a statement that the doctrine is inapplicable to determinations by an administrative agency. This may be partly due to the fact that the doctrine of res judicata, properly understood, has only a narrowly confined area of application in the field of administrative law. Properly understood, this doctrine does not operate as a limitation on the jurisdiction or powers of a tribunal before which the plea is made, because it may not be applied where the judgment is neither pleaded nor offered in evidence, and the defense of res judicata may be waived. The doctrine operates only upon the parties and prevents them, on account of a prior determination, from litigating a controversy or issue which, except for the prior determination, could have been litigated in the subsequent proceedings. [2 Am.Jur.2d, Administrative Law, § 496 at 305; footnote citations omitted]
*26 PERC argues that even if the Civil Service Commission is found to have concurrent jurisdiction, res judicata or collateral estoppel are not applicable where administrative agencies enforce different statutes, relying on Town of Dedham v. Labor Relations Comm'n, 365 Mass. 392, 312 N.E.2d 548, 557-558 (Sup. Jud. Ct. 1974). The Massachusetts court noted that absent a statute, an absolute bar need not be universally imposed precluding an agency from disregarding a sister agency's determination. 312 N.E.2d at 557.
We are aware that some cases do seem inclined to turn on the existence of separate statutes and the limitations of the statutory authority as the stated reason for concluding the issues are not identical, and for reasons such as undefined public interest. See, e.g., Tipler v. E.I. duPont deNemours & Co., 443 F.2d 125, 128-129 (6 Cir.1971) (finding by N.L.R.B. that dismissal not due to union activity or racial bias held not binding in subsequent federal suit under Civil Rights Act of 1964 where different primary basis for relief); and Nigosian v. Weiss, 343 F. Supp. 757 (E.D. Mich. 1971) (state agency considered state law, and federal court considered claim under federal law). In those cases it was noted that actions valid under one statute might be invalid under the other statute. That is not the situation in the instant case. Anti-union animus would be improper under both statutory schemes. However, this may be more a matter of semantics. Cf. U.S. v. Utah Constr. & Mining Co., supra, 384 U.S. at 419, 86 S.Ct. at 1558, 16 L.Ed.2d at 659.
Irrespective of the validity of the approach taken by the foregoing line of authority, we see no reason to apply the rationale of those cases in the context of the functions of Civil Service and PERC where, as here, the underlying factual situation is the same and the thrust of the relief sought is to obtain promotions, or the like, in public sector employment. We see no justification for holding that the public interest in these circumstances under one statute should be deemed to be any more significant than under the other, where, as in the present case, there was a full *27 and fair adversarial hearing and findings based thereon by Civil Service. In this situation it is inappropriate to say that certain governmental agencies have a public interest and others do not. By their very nature, public governmental agencies would all appear involved in or touched with a public interest. We, therefore, decline to make any distinction solely on that basis. Certainly, as a general proposition there is no less public interest in having promotions in the public sector made solely on the basis set forth under the constitutional mandate and the implementing Civil Service laws, than in preventing "unfair practices" in the public sector under N.J.S.A. 34:13A-5.4, implementing the constitutional right of public employees to organize, present to and make known to public bodies their grievances and proposals through representatives of their own choosing.
Principles of comity should apply and one agency should ordinarily defer to the other agency's determination in order to avoid wasteful, duplicative litigation. We are of the opinion that the circumstances here and the nature and intent of the broad and long-established Civil Service statutory scheme require more than application of principles of comity. The Attorney General recognized the problem of duplication of proceedings when his brief stated:
It is not suggested, however, that when an employee pursues the different avenue of appeals available in sister agencies, one agency, when considering an issue previously litigated before a sister agency, should or may completely disregard a determination made by a sister agency on such issue. The duplication of factual proof of such an issue and the consideration thereof by two different agencies is costly and time-consuming to the parties, the witnesses, the agencies and, ultimately, the public.
Res judicata as a principle of law bars a party from relitigating a second time what was previously fairly litigated and determined finally. The general requirements for the invocation of this principle are a final judgment by a court or tribunal of competent jurisdiction, identity of issues, parties *28 and cause of action and thing sued for. Lubliner v. Paterson Bd. of Alcoholic Bev. Control, supra, 33 N.J. at 435.
Along with its related doctrine of collateral estoppel (see Mazzili v. Accident, etc., Casualty Ins. Co., etc., 26 N.J. 307, 313 (1958)). it rests upon policy considerations which seek to guard the individual against vexatious repetitious litigation and the public against the serious burdens which such litigation imposes on the community. [Ibid.; citations omitted]
See also Constant v. Pacific Nat'l Ins. Co., 84 N.J. Super. 211, 216 (Law Div. 1964).
Collateral estoppel is that branch of the broader law of res judicata which bars relitigation of any issue or fact actually determined in a prior action, generally between the same parties, involving a different claim or cause of action. See State v. Gonzalez, 75 N.J. 181, 186 (1977); State v. Redinger, 64 N.J. 41, 45 (1973); United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 101 (1977); and Gareeb v. Weinstein, 161 N.J. Super. 1, 13 to 18 (App. Div. 1978). The terms are sometimes used interchangeably and applied broadly. Compare, Restatement, Judgments, § 1 (1942).
We acknowledge that a strict formulaic application of these concepts is not mandated in all administrative proceedings, and thus they generally are not applied to judgment or policy matters as opposed to issues of fact. See Lubliner v. Paterson Bd. of Alcoholic Bev. Control, supra, 33 N.J. at 436-438; Russell v. Tenafly Bd. of Adj., supra, 31 N.J. at 65; Trap Rock Industries, Inc. v. Sagner, 133 N.J. Super. 99, 109 (App. Div. 1975), aff'd 69 N.J. 599 (1976). When these concepts do not work well as applied to particular types of administrative action, they may be appropriately relaxed or qualified "without destroying [their] essential service in preventing the same parties or their privies from unnecessarily litigating the same questions a second time or litigating piecemeal." 2 Davis, Administrative Law, § 18.03 at 558.
*29 Whether, for instance, collateral estoppel should be applied to a particular agency determination may depend on many factors, all of which are to be considered towards a fair resolution. In Trap Rock, 133 N.J. Super. at 109, the court recognized that in the setting of an administrative proceeding such concepts are often limited to fact findings because a particular administrative agency may have continuing regulatory responsibilities over matters within its jurisdiction.
We have considered the existence and purpose of the two statutory schemes. They can be read in pari materia in order to harmonize their provisions to the fullest extent possible. See Gilchrist v. Haddonfield Bd. of Ed., supra, 155 N.J. Super. 358. The existence of separate statutory provisions or the public character of each separate agency does not mean that concepts such as res judicata and collateral estoppel should not apply. See 2 Davis, supra, § 18.04 at 578. There is a public interest in each statute, neither of which can be said to outweigh the other. In that setting and under the circumstances of this case the parties are and should be bound by the Civil Service determination. Cf. 2 Am.Jur.2d, Administrative Law, § 497 at 305-306. Nothing in the factual milieu warrants holding PERC has any overriding and independent standing here.
We conclude that predicated on the record of the hearings before Civil Service, the issue of prejudice or lack of good faith due to union activities was fully and fairly litigated by the parties in a formal, adversarial proceeding and that res judicata, collateral estoppel or principles of issue preclusion bar the parties from seeking a contrary fact finding based on those past events in another forum. See Texaco, Inc. v. Operative Plasterers, etc., Int'l Union, Local 685, 472 F.2d 594 (5 Cir.), cert. den. 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (1973) (N.L.R.B. decision "res judicata" on issue of liability in subsequent suit for damages); International Wire v. Local 38, Int'l Brotherhood of Elec. Workers, 475 F.2d 1078 (6 Cir.1973) (N.L.R.B. finding of no unfair labor practice barred company's federal suit for *30 damage by collateral estoppel); Paramount Transport Systems v. Chauffeurs, Teamsters & Helpers Local 150, etc., 436 F.2d 1064 (9 Cir.1971) (N.L.R.B. trial examiner's final determination of secondary boycott binding by collateral estoppel); see also, 2 Cooper, State Administrative Law, supra at 525-526. Cf. Ciba Corp. v. Weinberger, 412 U.S. 640, 643, 93 S.Ct. 2495, 2497, 37 L.Ed.2d 230, 233 (1973); Brown v. Matlack, Inc., 160 N.J. Super. 40, 47-48 (App. Div. 1978).
In summary, the factual context in dispute involved essentially the same time period, the same and similar events and a similar cast of witnesses. The facts presented during the hearings were in the same time frame and remained essentially static. The parties were adequately represented by counsel while participating in a plenary hearing before Civil Service. They were not restricted in their proofs and the witnesses appeared available for each hearing. Nor is it even suggested that the parties did not understand the finality of an unappealed determination of Civil Service. See 2 Davis, Administrative Law, §§ 18.01 and 18.03. That some additional witnesses may have testified before PERC does not warrant a relaxation of the rule here. Cf. Marshall v. Johnson, 127 F.2d 544, 546 (9 Cir.1942); Texas Employers' Ins. Ass'n v. Sheppeard, 42 F. Supp. 669, 671 (S.D. Tex. 1938); Albrecht v. Raab, 127 N.J.L. 292 (E. & A. 1941); Servis v. Cooper, 33 N.J.L. 68, 71-72 (Sup. Ct. 1868). Permitting a second consideration of the same or similar issues under these circumstances is not warranted.[15]Cf. 2 Am.Jur.2d, Administrative Law, § 502 at 314 (1962).
*31 We choose to use the term collateral estoppel as a bar merely because the proceedings were before separate state agencies. Cf. F.T.C. v. Texaco, Inc., 170 U.S. App. D.C. 323, 333, 517 F. 2d 137, 147 (D.C. Cir.1975); Nash v. Brooks, 276 N.Y. 75, 11 N.E.2d 545, 547 (Ct. App. 1937); 2 Am.Jur.2d Administrative Law, § 500 at 311, n. 15 and § 502 at 313, n. 12. The term "issue preclusion" would serve as well. Cf. Restatement, Judgments 2d (Tent. draft No. 4, 1977), § 68. The Civil Service hearing officer had concluded that when the promotions were made by the fire chief "he did not discriminate against the appellants because of their union activities". This finding and conclusion, unappealed, are binding upon the charging parties. See State ex rel. Acorman v. Pitner, 42 N.J. 251 (1964).
Even if the record had not established the trial of that issue, because of our holding of concurrent jurisdiction of the two agencies over the same parties, we might alternatively determine that the single controversy doctrine[16] should be invoked since the parties could have raised the issue in the first hearing. See Ciba Corp. v. Weinberger, supra, 412 U.S. at 644, 93 S.Ct. at 2498, 37 L.Ed.2d at 234; and Gareeb v. Weinstein, supra, 161 N.J. Super. at 913.
Thus, where a public employee has invoked the concurrent jurisdiction of a state agency (such as Civil Service), and proceeds before that agency where he raises or could have raised an issue cognizable by another agency, unless he seeks a stay of the first proceedings, such employee *32 will be bound by applicable principles such as res judicata or collateral estoppel if the issue is fully and fairly litigated and a final and binding determination obtained therein. If, on the other hand, the party filing the charge prosecutes the matter (see N.J.S.A. 34:13A-5.4(c)) first before PERC and obtains a determination that an unfair practice was committed, that factual finding will likewise generally be binding on Civil Service, subject to any further proceedings, requirements and determinations of merit and fitness by Civil Service if matters such as appointments and promotions are involved.
An unfair labor practice issue, as a matter of primary jurisdiction, should normally be determined by PERC, even though PERC and Civil Service have concurrent jurisdiction with respect to that issue, when it involves the rights of promotion, or the like, of Civil Service employees. We think that the "exclusive power" provision of N.J.S.A. 34:13A-5.4(c) may evince such a legislative intent.
Thus, to prevent races to decision before separate agencies and to minimize the mischief of inconsistent determinations and remedies, as well as potential questions of supremacy of Civil Service in such matters as appointments and promotions, we would consider it appropriate in future cases where a complaint involving unfair labor practices is filed with both agencies (perhaps to ensure timeliness of application thereto), that as a matter of comity and good sense Civil Service should defer or hold the matter in abeyance (without the necessity of application to the court for such relief) until PERC makes its findings as to such labor practices. These findings should likewise be binding upon Civil Service within the general framework of the principles stated in this opinion. Thereafter, Civil Service could properly proceed to any remaining issue of merit and fitness, if necessary and appropriate.
A charging party who properly succeeds before PERC should be able to obtain appropriate relief from that agency not inconsistent with the functions of Civil Service. Such a *33 charging party could then apply to Civil Service with respect to additional remedies that may be available from that agency.
The essence of the present case is whether the failure to promote was based on unfair labor practices or other factors going to merit and fitness. Here, the relief granted by PERC to the extent not inconsistent with Civil Service authority, even though within PERC's power, was inappropriate because the unfair labor practice issue  an essential factor in the matter of the promotion hearings before Civil Service  had already been determined adversely to the charging parties by Civil Service. Under these circumstances PERC should not have granted ancillary cease and desist and related relief.

IV
Hackensack also challenges the ability of PERC to fairly review allegations of unfair practices, in part based on the makeup of the Commission. It relies on a statement in Burlington Cty. Evergreen Park Mental Hosp. v. Cooper, supra, where the Supreme Court commented:
* * * Finally, in this connection it must be observed that a Commission composed, as this one is, of two representatives of labor, two of employers, and three from the public, is more geared to mediation and arbitration than to adjudication. Where adjudication and affirmative remedy are involved one looks for professional type boards. [56 N.J. at 593-594; citations omitted]
See and compare West Orange Bd. of Ed. v. Int. Union of Operating Engineers Local 68, 109 N.J. Super. 116, 120-121 (App. Div. 1970), and Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, supra, 149 N.J. Super. at 355 (concurring opinion); and 2 Davis, Administrative Law, supra, §§ 13.01 and 13.02.
In view of our decision we find it unnecessary to reach the merits of this issue or the other issues raised by Hackensack or any other person involved in this appeal, including those relating to certain of the remedies ordered by PERC.
The determination of PERC is reversed and set aside. The application for an order in connection with the "cross-appeal" is denied, and the same is dismissed. No costs.
NOTES
[1] Technically, PERC was not a party below and should not be referred to as a respondent or cross-appellant on this appeal. See N.J.S.A. 34:13A-5.4(c). Cf. Galloway Tp. Bd. of Ed. v. Galloway Ed. Ass'n, 149 N.J. Super. 352, 355 (App Div.) (concurring opinion), certif. granted, 75 N.J. 29 (1977). It was the administrative body that heard the charges of unfair labor practice. We, therefore, consider what has been denominated as a "cross-appeal" to be an application for an order under N.J.S.A. 34:13A-5.4(f).
[2] Fire fighter Winner had been ranked number three. He did not appeal to Civil Service. He was denied relief by PERC.
[3] Under Civil Service rules and regulations Hackensack was allowed to choose from any three candidates on the list certified by Civil Service for appointment, without regard to rank within the grouping of three. See N.J.S.A. 11:10-6, N.J.S.A. 11:22-16 and N.J.S.A. 11:27-4. There is no statutory requirement to fill a vacancy, and appointments can only be made in accordance with the Civil Service Law. N.J.S.A. 11:21-1. The "total discretion of the appointing authority" under the promotional procedures is "subject to the rule of reason" and must not be in bad faith. Marranca v. Harbo, 41 N.J. 569, 575-577 (1964).
[4] The Civil Service hearing officer took testimony on October 29, and November 12, 1975 and January 6, 1976. The PERC hearing examiner took testimony on October 21 and November 21, 1975 and January 8, 1976. The same attorneys represented the respective parties at each hearing and on all the appeals. Each hearing transcript ran approximately 400 pages. Thirteen witnesses testified before Civil Service. Of these, nine also testified before PERC as well as three others. Winner testified in the PERC proceedings but not in the Civil Service hearing. This omission resulted in one battalion chief who testified as to his performance not being called before Civil Service because Winner was not a party to that appeal.
[5] He found the facts as stated in the discussion part of his report and recommendation (thereby impliedly rejecting contrary factual testimony), and his additional findings of fact included:

* * *
8. Both Appellants were active members and officers of the firemen's union.
9. As active members of said union they made many complaints to the Civil Service concerning the failure of the Appointing Authority to make the promotions from the said list within a reasonable time.
10. Both Appellants criticized openly and emphatically two orders issued by the Chief.
* * *
18. Two of the men so promoted were active union officers.
* * *
23. The Fire Chief based his decision on promotions based on all reports given to him by the Deputy Chief in reference to attitude and conduct concerning orders, disciplinary actions because of infractions committed by Appellants and a study of the safety patrol reports submitted by the candidates.
[6] The individuals who were certified by Civil Service and promoted to fire lieutenant were not made parties to any proceedings. We are advised that the promotional list involved in this case expired January 1, 1978. See N.J.S.A. 11:22-32 as to the maximum three-year period. See also, Marranca v. Harbo, 41 N.J. 569, 574 (1964); Imbriacco v. State Civil Service Com'n, 150 N.J. Super. 105, 108-109 (App. Div. 1977); In re Application Extension of Newark Police Serg ant, 149 N.J. Super. 121, 125-126 (App. Div. 1977), and Saletta v. Civil Service Com'n, 148 N.J. Super. 451, 455 (App. Div. 1977). In Marranca the court said:

We conclude therefore that the first list expired in the ordinary course, subject to revival for the limited purpose of permitting the execution of a judgment favorable to plaintiff on his primary claim. It follows therefore that the five appointments from the second list were valid, the appointment of one to give way if plaintiff is otherwise entitled to prevail. [41 N.J. at 574]
PERC's determination was made while the list was still effective. Our determination on this appeal makes it unnecessary to consider the difficult potential questions concerning PERC's ordering of promotions as part of the remedy, if the individuals were otherwise qualified. Our law is settled concerning the inability to extend a "stale list" beyond the three-year period, except where there is a timely appeal to the Civil Service Commission and from the Commission to the courts. We also need not consider whether those promoted are necessary parties or whether promotions previously made may have had to be rescinded in whole or in part or whether additional vacancies may fortuitously exist due to the passage of time to allow for such promotions. The record does not indicate that additional vacancies existed at the time of PERC's order.
[7] Depositions of the city manager were introduced by the charging parties in the PERC hearing from another action in which Kearney was challenging an order prohibiting him as a fire lieutenant from holding his union office. This deposition was, in effect, cumulative as to the order relative to acting lieutenants.
[8] Cf. N.J.S.A. 34:13A-3(f) and -5.3. We do not consider the correctness of this conclusion on this appeal. Nor do we find it necessary to discuss the appropriateness of the tests applied by the PERC hearing examiner because of our determination of this appeal. Compare Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).
[9] N.J.S.A. 34:13A-5.4 speaks broadly of "unfair practices." Compare subsection (a)(3) and N.J.S.A. 11:17-1.
[10] N.J.S.A. 11:5-1(c), (d) gives the Civil Service Commission the mandate to "[m]ake investigations * * * concerning matters pertaining to the enforcement and effect of this subtitle," and:

Here appeals * * * of persons in the classified service sought to be removed, demoted in pay or position, suspended, fined or otherwise discriminated against contrary to the provisions of this subtitle, and render decisions thereon and require observance of the decisions. * * * [Emphasis supplied]
N.J.S.A. 11:5-1(f) provides that the Commission shall:
Establish procedures for maintaining adequate employer-employee relations, and for the orderly consideration of disputes, grievances, complaints and proposals relating to the employer-employee relationship, in the classified service of the State; and make investigations, conduct hearings and make rulings with respect thereto. Such rulings shall not be interpreted to compel or require the expenditure of moneys which are not available or the incurring of obligations not otherwise authorized by law.
[11] The Attorney General's argument appears to concede that the Legislature could devise a different scheme for complying with the constitutional provisions for merit and fitness in the public service.
[12] Hackensack has also argued that promotion is not a term and condition of employment and that N.J.S.A. 11:21-1 and 3 is exclusive as to promotions. N.J.S.A. 11:21-2 creates a civil action if officers or officials of the municipality do not follow the civil service law as to promotions and personal liability may follow. We need not decide that issue in this case, but based on concurrent jurisdiction, see no reason if anti-union animus was the basis for failure to promote, why either Civil Service or PERC could not inquire into same.
[13] The concept of "exclusive power" is not defined in the statute, but could be used in the sense that the term "primary jurisdiction" is used. Primary jurisdiction is essentially a question of whether an aggrieved party applies first to the administrative agency or the court. 3 Davis, Administrative Law, § 19.01 at 4 (1958), notes in a not totally dissimilar discussion:

Of great consequence  and sometimes overlooked  is the idea that the agency's priority of jurisdiction may in practical effect mean only that the agency lays the foundation for a judicial determination of the crucial questions.
As indicated hereafter in the body of this opinion, we have concluded that the term "exclusive power," as used in N.J.S.A. 34: 13A-5.4(c), when considered in the context of the merit and fitness authority of Civil Service, generally should be interpreted to vest primary jurisdiction of that issue in PERC.
[14] Compare the provision of the Administrative Procedure Act as to declaratory rulings which makes them binding on "the agency and all parties to the proceedings on the state of facts alleged." N.J.S.A. 52:14B-8.
[15] Although not specifically urged, we do not consider that N.J.S.A. 34:13A-5.4(f) in any way precludes our holding here. That subsection provides for enforcement of PERC's order and its findings of fact "if based upon substantial evidence on the record as a whole. * * *" We consider the provision inapplicable here in view of what we have held to be the legislative intent in connection with the exclusive power provision of PEERA and the merit and fitness provisions of the Civil Service Act.
[16] As to the entire or single controversy doctrine, see also, generally, Applestein v. United Board & Carton Corp., 35 N.J. 343 (1961); Silverstein v. Abco Vending Service, 37 N.J. Super. 439, 449-451 (App. Div. 1955); Tumarkin v. Friedman, 17 N.J. Super. 20 (App. Div. 1951), certif. den., 9 N.J. 287 (1952); see also, Garrou v. Teaneck Tryon Co., 11 N.J. 294, 304-305 (1953); cf. Irval Realty v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 376 (1972). This concept is similar to the pre-1947 rule of abatement. See Smith v. Red Top Taxicab Corp., 111 N.J.L. 439, 444 (E. & A. 1933); Dengler v. Hays, 63 N.J.L. 14, 15 (Sup. Ct. 1899).