# JANUARY TERM, 1916.

## SAVAGE *v.* CITY OF DETROIT.

MUNICIPAL CORPORATIONS—CITIES—OFFICES—DETROIT CHARTER—
CIVIL SERVICE.

Under the civil service provision of the charter of the city of Detroit, a candidate for the office of ward foreman who stood highest in his examination of any of the candidates for the vacancy was entitled to the writ of mandamus to enforce the right of relator to hold the office, which was filled by the commissioner of public works by the appointment of an applicant who did not possess the necessary qualifications, but who was not approved by the commission and whose name was later withdrawn. It was only a question of the man, and the relator was the right man for the position; respondents' contention that some action of the appointing power was necessary did not apply to the facts shown, as the power seemed to be exercised, but in favor of an ineligible applicant. KUHN, BIRD and BROOKE, JJ., dissenting.

Certiorari to Wayne; Lamb, J., presiding. Submitted January 4, 1916. (Calendar No. 27,009.) Decided January 20, 1916.

Mandamus by Robert Savage against the city of Detroit and others to compel the respondents to enforce the right of relator to hold an office under the civil service rules of the city of Detroit. An order granting the writ is reviewed by respondents on certiorari. Affirmed.

(144)

*James H. Pound*, for relator.

*William E. Tarsney* (*Harry J. Dingeman*, of counsel), for respondents.

OSTRANDER, J.  The relator, Robert Savage, is qualified, according to the civil service rules of the city of Detroit, to fill the position of ward foreman.  A ward foreman died.  The commissioner of public works notified the civil service commission September 27, 1915, of the promotion or appointment of one Quitman A. Smith to fill the vacancy, and asked the approval of the said commission.  Smith was not, under the civil service rules, qualified to fill the place.  No action was taken by the commission.  Thereafter, on October 6, 1915, the commissioner of public works informed the commission that the appointment or nomination of Smith was withdrawn.

The relator, on October 5, 1915, filed a petition in the circuit court for the county of Wayne, in which he asked for an order requiring the commissioner of public works, the common council, the city of Detroit, and the civil service commission to show cause why he should not be appointed to take and hold the said position of ward foreman.  He alleged, inferentially at least, that he headed the list of those eligible for appointment to the place.  Respondents answered, admitting relator's eligibility, by examination and civil service rules, to the position of ward foreman of the third ward, due to the death of the incumbent, and asserting that:

"While a vacancy may exist in the position of ward foreman of the Third ward, relator is not entitled to said position until such time as request to fill said vacancy is made by the department head, and that at the time of answering said petition there is no such request pending before the civil service commission."

190 Mich.—10.

There was a demurrer to the answer and the cause came on for hearing upon the petition, answer, and demurrer. The court ordered the writ to issue, and it was issued October 18, 1915.

We are referred by respondents particularly to section 9 of the local bill or act amending the charter of the city so as to provide for civil service regulation for employees of the city. That sections reads:

"SEC. 9. The head of any department or office in which a position classified under this chapter is to be filled shall notify said commission of that fact, and said commission shall certify to the appointing officer the name and address of the candidate standing highest upon the eligible list for the class or grade to which such position belongs. The appointing officer shall notify said commission of each position to be filled separately, and shall fill such place by the appointment of the person certified to him by said commission therefor, which appointment shall be on probation for a period to be fixed by said rules. At or before the expiration of the period of probation the head of the department or office in which a candidate is employed may, with the consent of said commission, based upon the written reasons submitted to them, discharge him. If not discharged prior to the expiration of period of probation, his appointment shall be deemed complete. To prevent the stoppage of public business or to meet extraordinary exigencies, the head of any department or office may, with the approval of the commission, make a temporary appointment to remain in force not exceeding sixty days, and only until regular appointment under the provisions of this chapter can be made. * * * The commission may give preference as between eligibles of equal rating, to those having dependent families, or those who, in any previous employment, have shown skill and adaptation for the particular work for which the labor is required, and said commission shall have authority to give preference for common labor to persons who by reason of advanced age or physical impairment or extreme need, they may deem entitled to same. No person shall be eligible to

the position of ward foreman of any ward other than the one in which he resides."

The provisions of sections 8 and 13 and 14 are also relevant:

"SEC. 8. From the returns of the examination held by the commission, it shall prepare an eligible list for each grade or class of positions in the competitive classified service of the city of persons whose general average standing upon examinations for such grade or class is not less than the minimum fixed by the rules of such commission, and who are otherwise eligible, and such persons shall take rank upon the eligible list as candidates in the order of their relative excellence as determined by examination without reference to priority of time of examination. In the event of more than one applicant receiving the same mark at an examination, priority in time of filing application shall determine the order in which their names shall be placed on the eligible list. The commission may strike off names of candidates from the eligible list after they have remained thereon one year. But any list may be extended by the commission for a period not exceeding one year."

"SEC. 13. Immediate notice in writing shall be given by the appointing power to said commission of all appointments, permanent or temporary, made in such classified civil service, and of all transfers, promotions, resignations or vacancies from any cause in such service, and of the date thereof, and a record of the same shall be kept by said commission. When any office or place of employment is created or abolished, or the compensation attached thereto altered, the officer or board making such change shall immediately report it in writing to said commission.

"SEC. 14. The civil service commissioners shall certify to the controller all appointments to offices and places in the civil service of the city, subject to their rules, and all vacancies occurring therein, whether by dismissal, resignation or death. Neither the controller of said city nor any other officer concerned in the auditing or paying of any salary or wages or other claims shall approve the payment of or be in any man-

ner concerned in paying any salary or wages to any person, subject to such rules, for services of an officer or employee in said city, before the appointment of such person to the city service has been certified by said commission to the controller, nor after the vacation of such person's office or employment shall have been so certified."

It does not appear that the place—the position or employment of ward foreman—has been abolished. It does appear that in the particular ward two ward foremen had been employed. There being a vacant place, the relator heading the list of eligibles, and being a resident of the ward, it is asserted by counsel for relator that he is inducted into the place by operation of law. On the contrary, respondents contend there must be some action of the appointing power before such a place can be filled. The judgment of the appointing power may be in such cases exercised to determine whether the public interest demands that a vacancy shall presently be filled, to deny which is to continue the maximum number of places and employees unless a place, or position, is formally abolished, regardless of the public necessity.

In my opinion, the position of relator is unsound, and that of respondents is sound. But the facts do not support the theory upon which respondents' argument is based. On the contrary, the facts support the conclusion that it was intended to fill the place. The appointing power was exercised in favor of the wrong man. It was and is a question only of the man, and relator is the right man. Therefore, no question being raised as to this method of determining relator's right, the judgment may be, and is, affirmed.

It is suggested, however, whether the civil service act does not contemplate that matters of this nature shall be settled by action of the civil service commission, and not by the courts, and whether, therefore,

relator ought not to have first presented the facts and his grievance to that body.

No costs are awarded.

STONE, C. J., and MOORE, STEERE, and PERSON, JJ., concurred with OSTRANDER, J.

KUHN, J. I am of the opinion that relator ought to have first presented his grievances to the civil service commission, and therefore should be denied relief here.

BIRD and BROOKE, JJ., concurred with KUHN, J.