JOSEPH T. MARRANCA, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. ROLF T. HARBO, DIRECTOR, ELIZABETH POLICE DEPARTMENT AND DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY (AND 5 OTHERS), DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.

Argued December 2, 1963—Decided March 2, 1964.

570

*Mr. John M. Boyle* argued the cause for defendant-appellant Harbo (*Mr. Calvin J. Hurd,* attorney for defendant-appellant Leach; *Mr. Seymour S. Lichtenstein,* attorney for defendant-appellant Tierney).

*Miss Marilyn H. Loftus,* Deputy Attorney General, argued the cause for defendant-appellant Department of Civil Service (*Mr. William L. Boyan,* Deputy Attorney General, on the brief; *Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. Eugene J. Kirk* argued the cause for defendants-appellants Brennan, Jr., McMahon, Jr., and Schlicker.

*Mr. Adrian M. Unger* argued the cause for plaintiff-respondent and cross-appellant (*Messrs. Milton M. & Adrian M. Unger,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J. This is a civil service case. Plaintiff, a patrolman in the Elizabeth Police Department, sued to compel the appointing authority to promote him to sergeant. During the pendency of the suit five other patrolmen were so promoted. Plaintiff then amended his complaint to challenge the validity of those promotions. The trial court held that

although plaintiff could not compel his own promotion and hence must fail in his original complaint, nonetheless the pendency of his suit operated to prevent the other appointments. *Marranca v. Harbo,* 76 *N. J. Super.* 429 (1962). All parties appealed and we certified the matter before argument in the Appellate Division.

There are a number of procedural issues which we will pass to reach and settle the substantive controversy affecting as it does the operation of a police department.

On May 4, 1957 the Civil Service Department conducted promotional examinations. The employment list which thereby emerged, and which we will call the first list, became effective March 13, 1958 and was to continue for two years. Plaintiff, initially seventh on that list, moved to first when the six ahead of him were promoted.

On January 26, 1960 a vacancy occurred in the position of sergeant. On March 4, 1960 plaintiff petitioned Civil Service to compel his promotion, alleging the vacancy and that the list was to expire on March 12. Actually Civil Service had already extended the list for six months and apparently had also called for another examination. On May 6, 1960 the Civil Service advised plaintiff that "The matter of appointment is one that rests entirely in the hands of the [appointing] authorities. The Civil Service Department cannot compel the authorities to make an appointment." It explained that it could act only if the appointing authority appointed a temporary incumbent or notified it of the vacancy, neither of which events had occurred. Plaintiff did not seek a review of that disposition of his petition.

An examination was held on May 21, 1960. A new list, which we will call the second list, was promulgated on January 26, 1961. Meanwhile Civil Service had extended the first list for still an additional six months so that it was to expire on March 12, 1961. Plaintiff, who, as we said above, was at the head of the first list, was number 16 on the second list.

The complaint in this action was filed on March 7, 1961, five days before the first list, as finally extended, was to

expire. On June 30, 1961 the appointing authority requested Civil Service to certify the names of eligibles for three appointments as sergeants. Civil Service certified the names, using the second list. Later the appointing authority decided to fill two more vacancies and further certifications were made, also from the second list. The five promotions mentioned above were made during the period of July 1961 to January 1962 from the names so certified.

As stated above, the trial court held that (1) plaintiff was not entitled to the relief he sought in his original complaint, but nonetheless (2) the mere pendency of his otherwise unsuccessful suit operated to continue the first list and thereby to invalidate the five promotions based upon the second list. We will consider these propositions in inverse order.

## I.

Examinations are to be held from time to time "to meet the needs of the service." *R. S.* 11:9-1. "Ideally, a competitive examination would be held every time a vacancy existed, thus assuring the selection of the most competent available person." *Kaplan, Law of Civil Service, p.* 163 (1958). But as a practical matter an employment list must serve for some period, and hence our statute provides that the list shall endure for no less than six months nor more than three years with respect to the state service and for no less than one year nor more than three years for the local service, as the Civil Service Commission may provide. *R. S.* 11:9-10; *R. S.* 11:22-32.

The Legislature has thus fixed the outer time limit of a list because a stale list disserves both the employer units and the coemployees whose eligibility to compete accrues after an examination. Indeed in New York it was held that the Legislature could not revive an expired list without doing violence to the principle of merit employment embodied in the Constitution of that State. *Hurley v. Board of Education,* 270 *N. Y.* 275, 200 *N. E.* 818 (*Ct. App.* 1936). We refer to that decision without passing upon the meaning of our own

constitutional provision, *Art.* VII, § 1, *par.* 2, to emphasize that both the public and the aspiring candidate would be unnecessarily hurt if the mere institution of a suit by someone extended a list for any and all purposes.

What then is the fair reading of *R. S.* 11:22–33 which deals with the impact of litigation upon the life of the employment list? It reads:

"When an eligible list has been established by the commission for any position or employment in the service of any county, municipality or school district, and a proceeding has been instituted in any court of record, with respect to the filling of any position or employment from such eligible list, such list shall not expire during the period in which such litigation is pending but shall be extended [1] from the time of the entry of judgment, [2] for a period of time equal to the period during which such proceeding or litigation was pending."

We have numbered the two adverbial phrases for ease in referring to them.

The sense of the statute seems clear enough: if there is a suit "with respect to the filling of any position or employment from such eligible list," justice should not be denied because the list expired during the pendency of the litigation. A direct statement to that effect would have been clear, but the draftsman unfortunately resorted to the indirect and rather fictional approach which the lawyer sees so often. Instead of saying that the expiration of the list shall not defeat the right in suit, the draftsman wrote in terms of an extension of the list. Thus the second adverbial phrase provided that the list shall be extended "for a period of time equal to the period during which such proceeding or litigation was pending." But that phrase, unless qualified, would overshoot the mark, for it would continue an old list for purposes unrelated to the needs of the litigation, to the prejudice of the employer and new aspirants. Hence, we think, the draftsman inserted the first adverbial phrase "from the time of the entry of judgment," to express the thought that the fictional extension shall come into being only upon the entry of judgment and then only for the purpose of implementing the judgment.

■ A careful reading of the statute in the light of its basic policy leads to that view. The purpose to extend the list for the entire period of the litigation is fully expressed in the second adverbial phrase. The first adverbial phrase can have but one of two roles. It can relate either to the *length* of the extension or to the *condition* upon which the extension shall come into being. If the phrase relates to the *length* of the extension, then it must mean that instead of extending the list "for a period of time equal to the period during which such proceeding or litigation was pending" as the second adverbial phrase provides, the extension is for *twice* that period. That of course is the view for which plaintiff contends. Thus if litigation consumes three or four years, the list will be continued during that period and thereafter for a like number of years. Moreover, the list may be extended endlessly by a succession of groundless suits. No one can think of a reason why the Legislature would want that extraordinary result, a result which would clash with the policy against staleness expressed in *R. S.* 11:22–32, that the term of eligibility of an applicant shall be fixed for each list by the commission "at not * * * more than three years." We must assume the Legislature intended to speak sensibly. "It is axiomatic that a statute will not be construed to lead to absurd results. All rules of construction are subordinate to that obvious proposition." *State v. Provenzano,* 34 *N. J.* 318, 322 (1961). Accordingly, since the second adverbial phrase provides an extension sufficient under any sensible view, it must follow that the first adverbial phrase was intended for another role, and that role can only be to condition or limit the sweep of the second adverbial phrase in the manner we have already stated.

■ We conclude therefore that the first list expired in the ordinary course, subject to revival for the limited purpose of permitting the execution of a judgment favorable to plaintiff on his primary claim. It follows therefore that the five appointments from the second list were valid, the appointment of one to give way if plaintiff is otherwise entitled to prevail.

## II.

We come then to the question whether plaintiff is entitled to an order compelling his own promotion. A preliminary question is whether the appointing authority had discretion with respect to whether and when to fill a vacancy, for if the appointing authority had that discretion and could not be ordered to fill a vacancy, we need not reach the question whether plaintiff could obtain an order directing the appointing authority to select him.

Plaintiff presented his case upon the premise that the preliminary question was academic because the appointing authority, defendant Harbo, if he had any discretion as to whether to fill a vacancy, exercised that discretion when he informed Civil Service of his intent to fill the five vacancies. But since the decision to fill the vacancies was made after the expiration date of the first list, plaintiff could rely upon that decision only on the hypothesis that the mere pendency of this suit operated to extend the first list. That hypothesis being unsound as we have already held, plaintiff must show he was entitled to relief at the time of his original complaint, that is, that the appointing authority had no discretion or that he abused whatever discretion he had.

The complaint alleged the appointing authority "arbitrarily and without justification failed and refused to promote plaintiff to the position of Sergeant as required by law." This general allegation was not particularized. Nor did plaintiff offer evidence of an invidious purpose. We know only that the first vacancy occurred in January 1960, about two months before the first list was originally due to expire, and that the appointing authority made no move to fill a vacancy until some 18 months thereafter.

We know of no statute which required the vacancy to be filled. Nor does the Civil Service Act contain such a mandate, or transfer to Civil Service the discretion normally vested in the appointing authority. Rather the statute starts with the premise that the appointing authority has already

decided to act and upon that premise directs what shall be done. Thus *R. S.* 11:21–1 provides that "No appointing authority shall select or appoint a person for appointment, employment, promotion or reinstatement except in accordance with this subtitle and the rules and regulations prescribed thereunder." It is upon the appointing authority's notification to the Civil Service that a vacancy is to be filled, that the Civil Service Department undertakes to certify the names of the eligibles. *N. J. S. A.* 11:22–16.

Even after deciding to fill a vacancy, the appointing authority continues to have a discretionary role. The statute does not provide that the highest on the employment list must be selected or that the choice shall rest with Civil Service. Rather, except for certain veterans' preferences, *N. J. S. A.* 11:27–1 *et seq.,* the statute provides the local appointing authority shall select one of three certified eligibles. *N. J. S. A.* 11:22–16; *Sogliuzzo v. City of Hoboken,* 62 *N. J. Super.* 243 (*App. Div.* 1960). Perhaps the statutory approach was influenced by the early constitutional question (now probably academic in our State in view of the civil service provision of our Constitution, *Art.* VII, § 1, *par.* 2), whether a civil service statute intruded upon a constitutionally guaranteed power of appointment, as to which it was generally held that the constitutional demand is met if the appointing authority could choose from among three. *Kaplan, Law of Civil Service, pp.* 171–75 (1958). But the statutory plan may also rest upon a conviction that no test can fully determine fitness. The provision for a probationary period of service reflects that thought. *R. S.* 11:22–6. Upon this approach, the appointing authority's discretion would continue, subject to the requirement that no one may be appointed unless his fitness has been established competitively, and there is authority in our State to support this view. *Township of Teaneck v. Volcker,* 128 *N. J. L.* 481, 483 (*Sup. Ct.* 1942); *Schroder v. Kiss,* 74 *N. J. Super.* 229, 240 (*App. Div.* 1962).

We need not fix the limits of the total discretion of the appointing authority. The present case involves only the ques-

tion of discretion as to whether and when to fill a vacancy. With respect to this, Civil Service has long taken the stand, upon the advice of the Attorney General in 1944 and 1945, that it could not compel an appointing authority to fill a vacancy. Decisions elsewhere support that view. *Kaplan, Law of Civil Service, pp.* 203–04 (1958); *City of Miami v. Rezeau,* 129 *So. 2d* 432 (*Fla. D. Ct. App.* 1961); *People ex rel. Rulo v. Prendergast,* 345 *Ill. App.* 297, 102 *N. E. 2d* 671 (*App. Ct.* 1951); *Bailey v. Kern,* 177 *Misc.* 904, 32 *N. Y. Supp. 2d* 386 (*Sup. Ct.* 1942); *cf. Savage v. City of Detroit,* 190 *Mich.* 144, 155 *N. W.* 1031 (*Sup. Ct.* 1916).

██ We have no doubt the appointing authority has this discretion, but as in the case of all delegated authority, it is subject to the rule of reason. The discretion must be exercised for the public good, and if the motivation is plainly against the public interest, judicial redress would be in order. Here, as we have said, no evidence was offered to support the charge of arbitrariness. We know only that one vacancy occurred in January 1960, about two months before the first list was to expire; that a new examination was called; that at unspecified dates thereafter, four additional vacancies occurred; that one vacancy was filled in July 1961, two in September, one in October, and the last in January 1962. We know also that shortly before suit, the power of appointment shifted from a board of police commissioners to the director of the police department. The record shows nothing of the needs of the police force during that period. We cannot assume the position was left vacant to serve some improper end.

It follows that the judgment is reversed except insofar as it rejects plaintiff's demand that he be promoted to sergeant, in which respect it is affirmed.

*For modification*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.