GENEVA TERRY, HELEN PAPP, AND EDITH SAVAGE, COM-
PLAINANTS-APPELLANTS, v. MERCER COUNTY BOARD OF
CHOSEN FREEHOLDERS, AND MERCER COUNTY YOUTH
HOUSE, RESPONDENTS-RESPONDENTS.

Argued February 23, 1981—Decided May 26, 1981.

Kenneth I. Nowak, Deputy Attorney General, argued the cause for appellants and the Division on Civil Rights (*John J. Degnan*, Attorney General of New Jersey, attorney; *Stephen Skillman*, Assistant Attorney General, of counsel).

*Paul D. McLemore*, Assistant County Counsel, argued the cause for respondents (*Paul T. Koenig, Jr.*, County Counsel, attorney).

The opinion of the Court was delivered by

HANDLER, J.

This is a civil rights case that calls for an examination of the nature and scope of the statutory remedial powers of the Director of the Division on Civil Rights under the Law Against Discrimination, *N.J.S.A.* 10:5–1 *et seq.* The appeal focuses upon the power of the Director to award remedial relief in the form of promotion and retroactive seniority on behalf of three public employees in order to rectify employment discrimination practiced upon them on account of their sex, contrary to *N.J.S.A.* 10:5–12(a).

I

Plaintiffs, Geneva Terry, Edith Savage and Helen Papp, were employees of the defendant Mercer County Youth House, a public facility which houses male and female juveniles awaiting judicial disposition of their cases by the Juvenile and Domestic Relations Court of Mercer County. The plaintiffs were employed by the Youth House in the position of Girls Supervisor. Terry and Savage were first hired in 1957, and Papp (since deceased) was hired in 1961.

Girls Supervisors have always been female while their counterpart, Boys Supervisors, have always been male. This distinc-

tion based on sex was an intentional practice on the part of the County since each group of supervisors was responsible for the general supervision of juvenile inmates of the corresponding sex, as well as other duties such as dispensing medicine, maintaining logs, and escorting inmates to educational and health facilities. In addition, the Girls Supervisors performed certain duties on a regular basis that were not required of the Boys Supervisors, like laundry, washing, serving and helping cook in the kitchen. The only other major duty performed by supervisors involved being placed in charge of the institution during the absence of the Superintendent of the Youth House. However, in practice, the Superintendent would designate only the senior man on each shift for this duty. Consequently, plaintiffs, as Girls Supervisors, never assumed those responsibilities, although their individual seniority and, presumably, their job experience were greater than that of the males who were placed in charge.

In 1972 the Department of Civil Service, pursuant to its regular statutory responsibilities, reviewed employment positions in Mercer County and undertook to identify the different public positions at the Youth House. It determined that there were three distinguishable job categories, Boys Supervisors, Girls Supervisors, and those placed in charge of the institution during the absence of the superintendent, referred to as "Senior Boys Supervisors." These positions were classified accordingly. Thus, the position of Senior Boys Supervisor was formally created at this time. Under the civil service classification, Senior Boys Supervisors are responsible for "running the institution in the absence of the Superintendent, *viz.*, proper filling out of medication forms, incident sheets, attendance sheets, meal count, and the transportation of juveniles to appointments." The Civil Service Department also established that one of the requirements for the job of Senior Boys Supervisor was one year's service as a Boys Supervisor, following the settled practice of the County.

The County did not fill this newly classified position immediately but instead relieved Boys Supervisors from the extra

duties and responsibilities that had led to the new classification of Senior Boys Supervisor. Sometime later, however, provisional appointments to the new positions were offered to all Boys Supervisors who had one year or more experience, these appointments to be permanent once the appointees had passed the appropriate Civil Service exam.

The first Civil Service exam for the permanent position of Senior Boys Supervisor was held in 1974 and, in accordance with the civil service specifications for the position, which reflected and codified the restrictions that had been placed upon the job by the County, only Boys Supervisors were eligible. After this examination, the provisional appointments of Senior Boys Supervisors were certified in 1975.

Following these certifications of the male supervisors, plaintiff Terry, on May 22, 1975, and plaintiffs Papp and Savage, on July 24, 1976, filed complaints with the New Jersey Division on Civil Rights charging that the Mercer County Youth House was discriminating against them on the basis of sex, since, as Girls Supervisors, they had not been given provisional appointments or the opportunity to take the civil service exam for the permanent position of Senior Boys Supervisor. After the filing of the civil rights complaints, a second civil service exam was held in 1977. The Civil Service Department determined that women in the Youth House had not had any opportunities for promotion (i. e., no Senior Girls Supervisor position had been created) and included women on the list of eligibles for the second test for the Senior Boys Supervisor position. The plaintiffs took the test and finished one-two-three.[1]

The civil rights action of the plaintiffs proceeded to a hearing in the Division on Civil Rights. The hearing examiner in the Division assigned to the case found that the Youth House had

---

[1]Plaintiff Papp, who finished third, has since died, making Robert Behan, a Boys Supervisor, third on the list. The scores were Terry-85, Savage-81, Papp-77, Behan-70.632.

discriminated against the three women. He recommended that the women receive (1) back pay for the wage differential between their salaries and that paid to men performing a similar job for a period of 180 days prior to their complaint, and (2) additional pay for the promotions that they would have received had it not been for discrimination. It was also recommended that humiliation damages be awarded to the women and that the Youth House be ordered to "cease and desist" from discriminatory wage scales and unequal assignments of duties on the basis of sex in the future.

The Acting Director of the Division on Civil Rights affirmed the findings of discrimination, but modified the recommendation by adding the following remedies: (1) the back pay award was extended beyond 180 days, to the date of the June 1970 statutory amendments that added sex to the list of prohibited classifications under the Law Against Discrimination; (2) back pay was awarded for extra duties performed by the women which were not required of the men; (3) the plaintiffs were to be appointed to the first available supervisory positions; and (4) when appointed, the women were to be entitled to seniority in the supervisory position equal to that of the senior male now holding such a position.

The Appellate Division affirmed the Division's finding of discrimination and the remedies which were ordered with the following exceptions: (1) it vacated the Director's order to the extent it could otherwise be understood to allow women to be Boys Supervisors and men to be Girls Supervisors; (2) it vacated the order that the plaintiffs be assigned to the first available supervisory positions, and (3) it vacated the order for retroactive seniority. 173 *N.J.Super.* 249 (1980).

On May 30, 1980, the Attorney General, representing the Division on Civil Rights, filed a petition for certification with this Court. It challenged the decision of the Appellate Division insofar as it disallowed the promotion and seniority remedies ordered by the Acting Director. No cross-petition was filed.

This Court granted certification on July 21, 1980. 85 *N.J.* 122 (1980).

## II

The issues posed by this appeal are constricted by the specific challenges presented in the Attorney General's petition for certification. The first question therefore is whether the Acting Director's order that the defendant must offer to the plaintiffs the next available vacancies in the position of Senior Boys Supervisor, or, simply, Senior Supervisor, pursuant to the authority delegated to him under *N.J.S.A.* 10:5–17, is invalid, as determined by the Appellate Division. That court believed that the Director's mandatory promotional remedy was invalid because it circumvented the civil service statutory "rule of three," *N.J.S.A.* 11:22–16, thereby improperly infringing upon the discretion of the hiring authority, and, in addition, because it constituted a form of "reverse discrimination." 173 *N.J.Super.* at 254. The Appellate Division seemingly viewed the Director's authority in these circumstances as limited only to imposing a requirement that the employing authority give "consideration" to females prior to the hiring of males, rather than the power to mandate the hiring of the women. *Id.*

We turn first to the operative statute enumerating the remedial powers of the Director of the Division on Civil Rights. *N.J.S.A.* 10:5–17 provides in pertinent part as follows:

> If, upon all evidence at the hearing the director shall find that the respondent has engaged in any unlawful employment practice or unlawful discrimination as defined in this act, the director shall state his findings of fact and conclusions of law and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful employment practice or unlawful discrimination and to take such affirmative action, *including, but not limited to,* hiring, reinstatement or *upgrading of employees,* with or without back pay, or restoration to membership, in any respondent labor organization, or extending full and equal accommodations, advantages, facilities, and privileges to all persons, as, in the judgment of the director, will effectuate the purpose of this act.... [emphasis added]

On its face, the remedial section of the Law Against Discrimination permits, at least generally, the ordering of promotion. It

specifically authorizes the "upgrading of employees" to rectify employment discrimination.  See *Flanders v. William Patterson College of N. J.,* 163 *N.J.Super.* 225, 234 (App.Div.1976) (upheld order of Director that woman associate professor be promoted to full professor).  This interpretation appears thoroughly consistent with the acknowledged purpose of the act, to "make all . . . victims whole," *Director, Div. on Civil Rights v. Slumber, Inc.,* 166 *N.J.Super.* 95, 108 (App.Div.1979), mod. 82 *N.J.* 412 (1980), see *Jackson v. Concord Company,* 54 *N.J.* 113, 127 (1969), and the interpretative principle that the remedial power of the Director should be broadly construed, *The Passaic Daily News v. Blair,* 63 *N.J.* 474, 484 (1973), *Polk v. Cherry Hill Apartments, Inc.,* 62 *N.J.* 55, 58 (1972).

The remedial order of the Director here did not mandate immediate hiring but merely required that the plaintiffs be appointed to the next vacancies whenever they might occur.  Hence, the power to promote *per se,* or to advance a discriminatee directly and immediately to a particular position, is not, in this case, of special moment.  In this vein, it may be noted that the federal scheme of remedies available to rectify and redress unlawful discrimination in employment has long contemplated remedial orders providing for the promotion of the victims of discrimination to next available vacancies, as was done here.  *E. g., Parson v. Kaiser Aluminum & Chemical Corp.,* 575 *F.*2d 1374, 1391 (5 Cir. 1978), *cert.* den. 441 *U.S.* 968, 99 *S.Ct.* 2417, 60 *L.Ed.* 2d 1073 (1979); *United States v. Georgia Power Company,* 474 *F.*2d 906, 927 (5 Cir. 1973).  See generally, *Franks v. Bowman Transportation Co.,* 424 *U.S.* 747, 96 *S.Ct.* 1251, 47 *L.Ed.*2d 444 (1976).  The breadth of the statutory language and the strong remedial thrust of the statutory purpose therefore clearly accommodate the remedy that was fashioned by the Director.

The issue posed by this appeal, then,—the extent to which the Director's broad statutory authority to remedy discrimination is delimited by the civil service "rule of three"—must be related to its particular exercise here, namely, the ordering of the promotions of the aggrieved plaintiffs to the next available vacancies.

As a further dimension of this issue, we must determine if the Director's remedial order itself impermissibly creates discrimination.

## A

The initial and critical inquiry is whether the "rule of three" serves as an absolute bar to a remedial promotion order by the Director of the Division on Civil Rights under *N.J.S.A.* 10:5–17.

The civil service "rule of three" is statutorily founded, *viz*:

The head of the department, office or institution in which a position classified under this subtitle is to be filled, shall notify the commission of that fact, stating the title or name of the position to be filled, duties to be performed and compensation to be paid. The commission shall certify to the appointing authority the names and addresses of three candidates willing to accept employment standing highest on the register for the class or grade in which the position belongs. The appointing authority shall select one of the three so certified. [*N.J.S.A.* 11:22–16.]

The Court in *Marranca v. Harbo*, 41 *N.J.* 569 (1964), discussed the rationale of the rule as follows:

Perhaps the statutory approach was influenced by the early constitutional question (now probably academic in our State in view of the civil service provision of our Constitution, *Art.* VII, § 1, par. 2), whether a civil service statute intruded upon a constitutionally guaranteed power of appointment, as to which it was generally held that the constitutional demand is met if the appointing authority could choose from among three. (citation omitted) But the statutory plan may also rest upon a conviction that no test can fully determine fitness. The provision for a probationary period of service reflects that thought. *R.S.* 11:22–6. Upon this approach, the appointing authority's discretion would continue, subject to the requirement that no one may be appointed unless his fitness has been established competitively, ... [41 *N.J.* at 576.]

The statutory rule of three authorizes the employing authority to appoint "one of the three ... certified [as] ... standing highest" among the candidates for the position. *N.J.S.A.* 11:22–16. The statute does not purport otherwise to circumscribe the manner in which the authority must select the "one of the three" for appointment. Thus, the purpose of the "rule of three" is to narrow hiring discretion, not to eliminate it. See *Schroder v. Kiss*, 74 *N.J.Super.* 229, 239 (App.Div.1962). The

rule of three recognizes employment discretion and seeks to ensure that such discretion is not exercised in a way inconsistent with "merit" considerations. See *N.J.Const.* (1947), Art. 7, § 1, ¶ 2 (requirement of merit selection of civil service employees, "ascertained, as far as practicable, by examination"). *Cf. Falcey v. Civil Service Commission*, 16 *N.J.* 117, 122–125 (1954) (Civil Service Commission was within its discretion to allow promotion of employee with 36 years experience without a competitive test and eligibility list since sometimes merit can better be determined by other means).

Nevertheless, the "rule of three" criterion exemplifies the general proposition that the discretion of government to hire is not absolute. Significant limitations, founded on constitutional and statutory principles, have always been an inherent concomitant of government's authority to employ. *E. g., State v. State Supervisory Employees Association,* 78 *N.J.* 54 (1978); *Nicoletta v. No. Jersey District Water Supply Commission,* 77 *N.J.* 145 (1978). The "rule of three" itself, in its basic intent and effect, acts to fetter the absolute discretion of government to hire. *Marranca v. Harbo, supra.*

Moreover, the "rule of three," though effectuating a fundamental legislative concern in preserving merit standards in public employment, was not conceived as an immutable or total bar to the application of other important criteria in governmental employment practices. While the "rule of three" accommodates the exercise of a broad discretion in hiring, even within its own internal standards addressed to merit and fitness, that broad discretion has not been immune to statutory restrictions on its scope. See, *e. g., N.J.S.A.* 11:10–6.1 (hiring authority must explain reasons for failure to choose person first on eligibility list); *N.J.S.A.* 11:27–4 (creating a veteran's preference); *N.J.S.A.* 40A:14–9.4 (fire departments are to prefer a resident if two applicants obtain the same score); *N.J.S.A.* 11:22–10.1 (person separated from civil service for economic reasons is to be placed on special reemployment lists which take precedence over other civil service lists); *Ballou v. State Depart-*

*ment of Civil Service,* 75 *N.J.* 365 (1978) (upholding constitution-ality of veteran's preference); *cf. Falcey v. Civil Service Commission, supra* (Civil Service Commission may dispense with competitive examinations and competitive test and utilize work experience). Hence, there is nothing intrinsic in the "rule of three," either in a constitutional sense or as a matter of legislative contemplation, that renders it totally impervious to reasonable modifications or influences.

We believe that the remedial section of the Law Against Discrimination, *N.J.S.A.* 10:5–17, by implication, constitutes such a statutorily created exception that further limits governmental discretion. This is consonant with the analogous federal remedial approach of Title VII of the Civil Rights Act, 42 *U.S.C.A.* 2000e–5, under which promotional relief has been recognized as entirely fitting, civil service regulations and principles notwithstanding. *E. g., Richerson v. Jones,* 551 *F.*2d 918, 924–925 (3 Cir. 1977); *Guilday v. Department of Justice,* 485 *F.Supp.* 324 (D.Del.1980); *cf. United States v. State of N. Y.,* 475 *F.Supp.* 1103, 1100 (N.D.N.Y.1979) (existence of state civil service rules did not serve to bar Court from ordering appointment of applicant discriminated against in violation of Title VII and other federal statutes). Moreover, as we have already noted, the remedial section of the Law Against Discrimination has been given a liberal construction, one "which comports with the preeminent social significance of its purposes and objects." *The Passaic Daily News v. Blair, supra,* 63 *N.J.* at 484. The Law Against Discrimination, and the constitutional precepts of equal rights which it vindicates, reflect a pervasive public policy. Its objectives are constant and have a vital place throughout the panoply of state laws and actions. *E. g., Jenkins v. Tp. of Morris School Dist. and Bd. of Ed.,* 58 *N.J.* 483 (1971); *Booker v. Board of Education, Plainfield,* 45 *N.J.* 161 (1965); *Matter of Bd. of Ed. of City of Trenton,* 176 *N.J.Super.* 553 (App.Div.1980), certif. granted, 87 *N.J.* 332 (1981); *N.J.S.A.* 2A:72–7, 2A:170–11, 10:1–1 *et seq.,* 10:2–1, 10:3–1, 11:10–6.1, 18A:38–5.-1, 34:11–56.2; *cf. Hinfey v. Matawan Regional Board of Educa-*

*tion,* 77 *N.J.* 514 (1978) (Commissioner of Education authorized and required to apply equal rights standards in administration of education laws). This is explicitly recognized in the civil service laws. *E. g., N.J.S.A.* 11:10–6.1 (hiring authority may not reject person first on eligibility list on the basis of impermissible classifications such as race, sex, and religious preference). A construction of the civil service statute which would completely submerge and displace the corrective purposes of the Law Against Discrimination in favor of the merit principles of the civil service laws is unwarranted, especially in cases where the discriminatees have demonstrated merit under civil service standards, and where, accordingly, the objectives of each set of laws can be reasonably accommodated.

Although the "rule of three" does recognize and preserve a measure of employment discretion, that managerial discretion, in appropriate cases, should be tempered by the exercise of remedial authority by the Director of the Division on Civil Rights to effectuate the overarching equal rights goals of the Law Against Discrimination. This would, in a fitting situation, include the promotion of persons who have suffered discrimination. For these reasons, we conclude that the Director has the statutory authority to impose the remedy of promotion to the next available vacancy in appropriate cases, with respect to individuals who have otherwise demonstrated their merit and fitness for such promotion under civil service standards, and that the statutory "rule of three" does not bar such remedial relief.[2]

### B

This conclusion does not end the inquiry in this case as to the propriety of the promotions. The question remains as to

---

[2]In this case, plaintiffs satisfied the statutory rule of three and, consequently, we are not required to decide whether the Director's remedial power to promote to the next vacancy under *N.J.S.A.* 10:5–17 can be applied to individuals who have not met this particular test of merit. That remains an open question.

whether the promotion remedy impermissibly creates discrimination under the factual circumstances of this case. The Appellate Division ruled that the Acting Director overstepped this limitation on his authority because the promotional order "excludes even the consideration of males." 173 *N.J.Super.* at 254.

An earlier decision of this Court, *Lige v. Town of Montclair*, 72 *N.J.* 5 (1976), prohibited the required use of racial quotas in hiring. The Court reasoned that the use of race as a hiring criterion is discriminatory against non-minorities when used on a class basis to benefit even those persons not affected by the past discrimination. However, the Court distinguished class-based relief situations from remedies to rectify instances of individual discrimination. *Id.* at 18, 22–23.

In this case, despite the confusing language contained in the Acting Director's order that "no male shall be considered . . .," the relief so determined does not constitute a nonparticularized class-based remedy. The Division's order in the context of the case clearly constitutes individual remedial action. Unlike *Lige*, the recipients of the promotion remedy are the actual victims of the discrimination, rather than members of the general class discriminated against who have not been directly affected by the particular discriminatory practices. Under the terms of the order, once the two surviving plaintiffs have been promoted to available vacancies, future hiring for the Senior Supervisory position is to be on a non-discriminatory basis. Hence, improper discrimination on the basis of sex is neither created nor imposed by the promotion order of the Acting Director.

## C

We conclude in this case that the Director's remedial order relating to the promotion of plaintiffs is valid. It is evident from the facts that plaintiffs meet merit and fitness criteria. The aggrieved plaintiffs here are fully qualified for the promotions as determined by civil service competitive rules, having placed highest in the promotional examinations for the position

of Senior Boys Supervisor, *i. e., ante* at 145 n.1. Moreover, the relief has been molded to cure the discrimination of the individuals actually victimized. Consequently, the Director's order of promotion does not offend civil service standards and was properly determined to be an appropriate form of remedial relief under *N.J.S.A.* 10:5–17.

## III

The remaining question is whether plaintiffs should receive an award of retroactive seniority, which was included in the final order of the Division on Civil Rights. The Appellate Division believed that the award of retroactive seniority was improper because it would affect "the rights of those persons who are Senior Supervisors," and thus was "unjustified and unreasonable." 173 *N.J.Super.* at 255.

The sole judicial source which has dealt extensively and comprehensively with the sensitive issues and complex equities involved in implementing a promotional or hiring remedy with an award of retroactive seniority has been the federal courts. Appropriately we turn to these decisions for guidance and instruction.

The seminal case in this area is *Franks v. Bowman Transportation Co.*, 424 *U.S.* 747, 96 *S.Ct.* 1251, 47 *L.Ed.*2d 444 (1976) (*Franks*), a racial discrimination case. In *Franks*, the United States Supreme Court held that there was a presumption in favor of awards of retroactive seniority since they serve to effectuate the "make-whole" remedial requirement of the federal anti-discrimination act. The Court further held that such a remedy could be denied only if, upon a general application, it would be inimical to the purpose of the statute, *i. e.*, eliminating discrimination and providing "make-whole" relief for its victims. *Id.* at 767–771, 96 *S.Ct.* at 1265–1267, 47 *L.Ed.*2d at 463–465. The rationale for such relief was thus expressed:

Obviously merely to require Bowman to hire the class 3 victim of discrimination falls far short of a "make whole" remedy. A concomitant award of the seniority credit he presumptively would have earned but for the wrongful treatment

would also seem necessary in the absence of justification for denying that relief. Without an award of seniority dating from the time when he was discriminatorily refused employment, an individual who applies for and obtains employment as an OTR driver pursuant to the District Court's order will never obtain his rightful place in the hierarchy of seniority according to which these various employment benefits are distributed. He will perpetually remain subordinate to persons who, but for the illegal discrimination, would have been in respect to entitlement to these benefits his inferiors. [*Id.* at 767–768, 96 *S.Ct.* at 1265–1266, 47 *L.Ed.*2d at 463.]

In response to charges that the remedy is unfair to innocent workers who had nothing to do with the discrimination, the Court added that:

[I]t is apparent that denial of seniority relief to identifiable victims of racial discrimination on the sole ground that such relief diminishes the expectations of other, arguably innocent, employees would if applied generally frustrate the central "make-whole" objective of Title VII ... [T]he result which we reach today—which, standing alone, establishes that a sharing of the burden of the past discrimination is presumptively necessary—is entirely consistent with any fair characterization of equity jurisdiction ... [*Id.* at 774, 777, 96 *S.Ct.* at 1269, 1270, 47 *L.Ed.* at 467, 469.]

The doctrinal concept underlying the *Franks* decision has been referred to as the "rightful place" theory, which contemplates a remedial stand between a complete purge of "but-for" effects of discrimination and maintenance of the status quo.[3] *Local 189,*

---

3The holding in *Franks* was preceded by several Courts of Appeals decisions. In these cases, the "rightful place" theory of remediation implicitly underlying the *Franks* decision gained prominence over other possible types of relief. *E. g., Local 189, United Papermak. & Paperwork. v. United States*, 416 *F.*2d 980 (5 Cir. 1969), *cert.* den. 397 *U.S.* 919, 90 *S.Ct.* 926, 25 *L.Ed.*2d 100 (1970); *Franks v. Bowman Transportation Co.*, 495 *F.*2d 398 (5 Cir. 1974), mod. 424 *U.S.* 747, 96 *S.Ct.* 1251, 47 *L.Ed.*2d 444 (1976); *Equal Employment Op. Com'n v. Detroit Edison Co.*, 515 *F.*2d 301, 316 (6 Cir. 1975), vacated on other grounds, 431 *U.S.* 951, 97 *S.Ct.* 2668, 53 *L.Ed.*2d 267 (1977); *Rogers v. International Paper Company*, 510 *F.*2d 1340, 1354 (8 Cir. 1975), vacated on other grounds 423 *U.S.* 809, 96 *S.Ct.* 19, 46 *L.Ed.*2d 29 (1975); *Acha v. Beame*, 531 *F.*2d 648, 653–654 (2 Cir. 1976). In Note, "Title VII, Seniority Discrimination and the Incumbent Negro," 80 *Harv.L.Rev.* 1260 (1967), wherein this rightful place theory was first delineated, the author spoke of a trichotomy consisting of "status quo"—existing seniority rights remain intact, but future discrimination is enjoined; "rightful place"—adjustment of seniority status to remove competitive disadvantages imposed by prior discrimination, explained in the body of this opinion; and "freedom now"—all effects of past discrimi-

*United Papermak. & Paperwork. v. United States*, 416 *F*.2d 980, 988 (5 Cir. 1969), *cert.* den. 397 *U.S.* 919, 90 *S.Ct.* 926, 25 *L.Ed.*2d 100 (1970); *Franks v. Bowman Transportation Co.*, 495 *F*.2d 398, 415 (5 Cir. 1974), mod. 424 *U.S.* 747, 96 *S.Ct.* 1251, 47 *L.Ed.*2d 444 (1976). This was expressed recently, *viz* :

> The rightful place theory is an equitable accommodation between two countervailing interests. The first interest is that of prior discriminatees to achieve what would have been theirs in the absence of discrimination. The countervailing interests are those of employers, employees, and consumers—in maintaining safety and efficiency—and those of employees who acquired their positions within the discriminating system and who would suffer unfairly if required to give up such positions to members of an affected class. [*Claiborne v. Illinois Cent. R. R.*, 583 *F*.2d 143, 149 (5 Cir. 1978), *cert.* den. 442 *U.S.* 934, 99 *S.Ct.* 2869, 61 *L.Ed.*2d 303 (1979), quoting from *Watkins v. Scott Paper Co.*, 530 *F*.2d 1159, 1168 (5 Cir. 1976), *cert.* den. 429 *U.S.* 861, 97 *S.Ct.* 163, 50 *L.Ed.*2d 139 (1976).]

This doctrine has been invoked in numerous federal cases to modify seniority interests. *E. g., James v. Stockham Valves & Fittings Co.*, 559 *F*.2d 310, 356 (5 Cir. 1977), *cert.* den. 434 *U.S.* 1034, 98 *S.Ct.* 767, 54 *L.Ed.*2d 781 (1978); *Gurmankin v. Costanzo*, 556 *F*.2d 184, 188 (3 Cir. 1977); *Russell v. American Tobacco Co.*, 528 *F*.2d 357, 364 (4 Cir. 1975), *cert.* den. 425 *U.S.* 935, 96 *S.Ct.* 1666–1667, 48 *L.Ed.*2d 176 (1976); *Rodriquez v. East Texas Motor Freight*, 505 *F*.2d 40, 63–64 (5 Cir. 1974), vacated on other grounds, 431 *U.S.* 395, 97 *S.Ct.* 1891, 52 *L.Ed.*2d 453 (1977); *Bowe v. Colgate, Palmolive Company*, 489 *F*.2d 896, 899–902 (7 Cir. 1973); *Bing v. Roadway Express, Inc.*, 485 *F*.2d 441, 451 (5 Cir. 1973); *McMullen v. Warner*, 416 *F.Supp.* 1163, 1167 (D.D.C. 1976). Retroactive seniority awards have been made in public sector cases as well as in the private sector. *E. g., Huntley v. Department of Health, Ed. & Welfare*, 550 *F*.2d 290 (5 Cir. 1977).

While these cases are, of course, not binding on this Court, they are, nevertheless, in philosophy and result consonant not only with the purpose of our Law Against Discrimination but with the expansive language in *N.J.S.A.* 10:5–17. This includes

---

nation, including seniority, are removed, with displacement of workers who would not have had their jobs were it not for discrimination, if necessary. *Id.* at 1268–1269.

the remedial mandate that the Director "take such affirmative action, including, but not limited to . . . upgrading of employees . . . or extending full and equal . . . privileges to all persons, as, in the judgment of the director, will effectuate the purpose of this act . . ." *Id.* The policy considerations marshalled in *Franks v. Bowman, supra,* and other Title VII cases are consistent with the essential make-whole themes of our Law Against Discrimination and therefore represent persuasive authority that this is a proper case for a broad interpretation of this remedial statute.

In certain circumstances, an award of retrospective seniority is a remedial tool by which the burden of past discriminatory action can be shared. In cases such as the present one, neither the innocent employees nor the discriminatees were at fault; hence, neither should be called upon to shoulder the burden of that past discrimination. But, a prohibition of retroactive seniority as a remedial technique would, in effect, always place the residual burden of discrimination on those victimized by it. In this sense such a bar would perpetuate rather than extirpate the destructive consequences of invidious discrimination. Foreclosing retroactive seniority would drastically subvert the Director's ability to hone or fine-tune remedial relief to meet individual circumstances and to mobilize his unique discretion and expertise to effectuate fully the "make-whole" policy of the Law Against Discrimination. We therefore hold that a retroactive seniority award is within the Director's scope of permissible remedies.[4]

The Acting Director's order of seniority here does not evince misguided discretion. The Acting Director ordered that plain-

---

[4]It is argued that such a holding would not be consistent with *Lige v. Town of Montclair, supra.* As previously noted, however, *ante* at 153, the rationale of the *Lige* decision is not inconsistent with an expansive view of remedies in dealing with a claim of individual discrimination, as opposed to claims by a class of persons whose members were not, individually, the victims of discrimination. 72 *N.J.* at 18, 23.

tiffs receive seniority "equal to that of the most senior Senior Boys Supervisor." Interlaying that order upon the facts of this case, *viz.*, that the plaintiffs were interested, available, and qualified at the date of the first appointment, the order serves to place the plaintiffs in the positions they would have been were it not for the illegal discrimination and falls well within the bounds of fair and appropriate relief.[5] Absent a "showing of illegality, arbitrariness, and the like," it is entitled to judicial approval. *Zahorian v. Russell Fitt Real Estate Agency*, 62 *N.J.* 399, 410 (1973).

## IV

By way of summary, we conclude that the Director of the Division on Civil Rights has the broad remedial powers to require that persons, denied promotion because of unlawful discrimination in employment and otherwise eligible for advancement under civil service standards, be promoted to the positions denied them when such positions become available. As an adjunct to such remedial relief, the Director in his sound discretion may award such discriminatees seniority on a retroactive basis, related to the acts of discrimination and the period of time the discriminatees were wrongfully deprived of employment benefits and opportunities.

Accordingly, the judgment of the Appellate Division is modified and the order of the Acting Director of the Division on Civil Rights as it relates to promotion and seniority is reinstated, to be enforced in a manner consistent with this opinion. No costs.

---

[5]The facts of the present appeal may not, of course, obtain in another case and the relief here fashioned may therefore not be entirely serviceable under different circumstances. For example, in the event that "more than one minority employee may have been denied each ... vacancy, the [Director] will be required to balance the equities of each minority employee's situation in allocating the limited number of vacancies ..." *Teamsters v. United States*, 431 *U.S.* 324, 372, 97 *S.Ct.* 1843, 1873, 52 *L.Ed.*2d 396, 438 (1977).

*For modification*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*Opposed*—None.