**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3566-19

IN THE MATTER OF
JASON RYAN, DEPUTY
FIRE CHIEF (PM3240V),
HAMILTON TOWNSHIP
FIRE DISTRICT NUMBER 2.

_____

Argued October 13, 2021 – Decided November 3, 2021

Before Judges Currier and Smith.

On appeal from the New Jersey Civil Service Commission, Docket No. 2020-738.

Patrick P. Toscano, Jr., argued the cause for appellant Jason Ryan (The Toscano Law Firm, LLC, attorneys; Patrick P. Toscano, Jr., on the briefs).

Debra A. Allen, Deputy Attorney General, argued the cause for respondent New Jersey Civil Service Commission (Andrew J. Bruck, Acting Attorney General, attorney; Sookie Bae, Assistant Attorney General, of counsel; Debra A. Allen, on the brief).

PER CURIAM

After petitioner Jason Ryan was not selected to be the Deputy Fire Chief in Hamilton Township Fire District Number Two (District), he appealed to the Civil Service Commission (Commission), asserting he was the most qualified candidate but was bypassed because of his involvement in union activity as shop steward and vice president for the New Jersey Firefighters' Mutual Benevolent Association Local No. 284 (FMBA). The Commission denied the appeal in May 2020, finding petitioner did not establish that the decision to bypass him for another candidate was based on an improper motive. Because we are satisfied the Commission's decision was not arbitrary or capricious and was supported by the evidence in the record, we affirm.

The Board of Fire Commissioners (Board) for the District interviewed three candidates for the Deputy Fire Chief position. At the time, petitioner ranked first on the eligible list for promotion to the position. After two interviews, the Board appointed Blair Sullivan to the position. Sullivan was ranked second on the eligible promotion list.

Petitioner appealed the decision to the Commission. He asserted the Board bypassed him for improper reasons and gave a detailed explanation for why he should have been promoted. Primarily, petitioner contended he was passed over because of his involvement in union activities as shop steward and

vice president for the FMBA. He referred to his participation in negotiations regarding personnel discipline and the District consolidation process. Petitioner raised four specific incidents in support of his allegations.

The Board responded to petitioner's appeal in a comprehensive letter, concluding the "appointment of [Sullivan] to Deputy Fire Chief [was] procedurally and substantively compliant and, therefore, should not be disturbed." Although petitioner had the highest exam score, the Board "recognized that the role of the Deputy Fire Chief is to serve as a 'managerial executive' under the direction of the Fire Chief," and to "assist in management and discipline of the Fire Department, to execute the directives of the [Board], and to manage and lead the Fire Department in the absence of the Fire Chief." In considering those points, the Board found Sullivan, "who scored second highest on the deputy fire chief examination[,] . . . was the better fit for the position and would be a better complement or 'right hand person' to the Fire Chief."

In selecting Sullivan, the Board stated it considered "various factors, including intangible factors beyond the candidates' test scores, and believed [he] demonstrated the fitness and merit required for promotion . . . ." For example, Sullivan: (1) had "been employed by the District in good standing since January

3

2001;" (2) had "served as a Fire Captain in good standing" for over five and a half years at the time of his promotion; (3) was "conscientious, . . . intelligent and a problem-solver", as well as "a team player who brings out the best in people, and is well liked and respected by this [sic] peers;" (4) was a "very good and capable fireman;" (5) had "no disciplinary issues;" (6) was a "skilled mechanic" who had "proven to be a valuable asset . . . in that regard;" (7) "recognize[d] challenges faced by the District . . . and then ha[d] the drive and initiative to address those needs;" (8) would "educate[] himself . . . to develop a proficiency, if not a mastery," when the department acquired new equipment, allowing him to "help train other firefighters on the equipment;" (9) was "interested in and . . . excited about the progression of the fire service (i.e. the use of new technologies to fight fires);" and (10) was an individual who "[f]irefighters want to work for and with." The Board found that "these factors, combined with his test score, his experience, his years of service, his personality, his attitude, and the way in which he complements [the] Fire Chief . . . all aligned with the District's supervisory and leadership needs for the Deputy Fire Chief position."

The Board also addressed petitioner's contention that he was not selected because of his union involvement, pointing out that two recently promoted fire

captains had served as shop steward and vice president for the FMBA. The Board stated it had no "bias or animosity against its members who champion the Union's rights." In its letter, the Board also meticulously discussed the incidents petitioner had raised in his appeal, finding them "irrelevant and of no legal moment" to the Board's decision to bypass petitioner.

Finally, the Board noted that when petitioner was appointed Fire Captain in 2008, he bypassed a candidate who was ranked ahead of him on the eligible list. Therefore, although petitioner asserted "he [was] the victim of an improper bypass . . . [,] [petitioner] himself was the beneficiary of a list bypass at one time." For the reasons outlined in its letter, the Board denied the appeal.

Petitioner thereafter appealed to the Commission. In denying the appeal, the Commission considered petitioner's initial letter, the Board's decision, and petitioner's certification responding to the Board's decision.

The Commission found that petitioner failed to meet his burden under N.J.A.C. 4A:2-1.4(c) to show by a preponderance of the evidence that the Board's decision to bypass him was improper. It noted that the Board was permitted to select any of the three candidates, and that, even if petitioner was more qualified than Sullivan, as long as the Board's decision was not based on "an unlawful or invidious motivation," it was within the Board's discretion to

bypass him. The Commission further found that the Board "presented legitimate business reasons for his bypass", such as: Sullivan's "leadership and problem-solving abilities"; "tangible criteria," such as his "mechanical abilities"; and "subjective criteria . . . such as [Sullivan's] passion, vision, attitude and personality [that] fit with [that of] the Fire Chief." Regarding subjective criteria, the Commission noted that in 2008, petitioner was promoted to Fire Captain over a higher-ranked candidate. That promotion was in part "based . . . on subjective criteria." Therefore, petitioner could not now complain about similar considerations being made during this promotion process. The Commission also addressed the specific incidents outlined by both petitioner and the Board.

The Commission concluded that petitioner failed to "present[] any witness statements, documents or other evidence" showing he was bypassed "not for legitimate business reasons, but for unlawful or invidious motivation due to his union affiliation." Therefore, the appeal was denied.

Our standard of review of an appeal from a state agency decision is well established. "Judicial review of an agency's final decision is generally limited to a determination of whether the decision is arbitrary, capricious, or unreasonable or lacks fair support in the record." Caminiti v. Bd. of Trs., Police & Firemen's Ret. Sys., 431 N.J. Super. 1, 14 (App. Div. 2013) (citing Hemsey

v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223-24 (2009)).  In reviewing an administrative decision, this court ordinarily recognizes the agency's expertise in its particular field.  Id. at 14 (citing Hemsey, 198 N.J. at 223).

Despite this long-recognized deferential standard of review accorded to agency decisions, petitioner asserts we should review the matter de novo.  He contends a more stringent review is necessary because the Commission "under-evaluated and overlooked crucial and credible evidence", and instead relied on the Board's "uncorroborated and pretextual statements for appointing" Sullivan. Petitioner states the Board "failed to consider or disprove that [he] possessed the required skills for the position", even though he "provided detailed examples which clearly outweighed all of the credentials and experience of" Sullivan.  He claims the Board did not make its decision "based on a preponderance of all evidence but on evidence arbitrarily selected to support a desired result."

We disagree and decline to apply a de novo review.  We recognize that when there has been "an 'obvious overlooking or under-evaluation of crucial evidence'" that is "so important", this court "may deny the agency decision the deference to which it is ordinarily entitled." Rudbart v. Bd. of Rev., 339 N.J. Super. 118, 126 (App. Div. 2001) (quoting Clowes v. Terminix Int'l, Inc., 109

N.J. 575, 589 (1988)). However, here, it is clear from the decisions, that both the Board and Commission considered all of the submissions. The Commission thoroughly addressed petitioner's arguments and determined he had not demonstrated the Board's decision to appoint another candidate was improper.

Next, petitioner contends the Commission's decision to deny his appeal was "woefully deficient, inadequate and not premised upon the record," as it "essentially disposed of [petitioner]'s claim by making the conclusory statement that he did not present any evidence that . . . he was 'bypassed . . . not for legitimate business reasons, but for unlawful or invidious motivation due to his union affiliation.'" Again, we disagree. The Commission presented ample legitimate reasons to justify its selection of Sullivan.

The New Jersey Constitution requires that "[a]ppointments and promotions in the civil service of the State, and of such political subdivisions as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive. " N.J. Const. art. VII, § 1, ¶ 2. These principles eventually led to the adoption of the "Rule of Three." In re Foglio, 207 N.J. 38, 45 (2011); N.J.S.A. 11A:4-8. For over a century, the rule has governed both the

certification of candidates to the appointing body and the appointing body's hiring discretion. Foglio, 207 N.J. at 45 (citing L. 1908, c. 156, § 21).

Under the Rule of Three, after the Commission certifies a list of at least three candidates, the appointing authority has the discretion to select any of the top three candidates; there is no presumption in favor of the highest-ranked candidate. N.J.S.A. 11A:4-8; see also N.J.A.C. 4A:4-4.8(a)(3). The purpose of the rule is "to limit, but not to eliminate, discretion in hiring." Foglio, 207 N.J. at 46. "While ensuring that competitive examinations winnow the field of candidates, the Rule of Three does not stand as 'an immutable or total bar to the application of other important criteria' by a government employer." Ibid. (quoting Terry v. Mercer Cnty. Bd. of Chosen Freeholders, 86 N.J. 141, 150 (1981)).

If the appointing authority selects a lower-ranked candidate, it is required to provide a "statement of the reasons 'why the appointee was selected instead of a higher ranked eligible [candidate].'" Ibid. (citing N.J.A.C. 4A:4-4.8(b)(4)). This requirement is intended to "ensure[] that only merit and fitness are factors in appointments, and that no impermissible reason is used for bypassing an eligible on a list." Ibid. (citing Loc. 518, N.J. State Motor Vehicle Emps. Union,

S.E.I.U., AFL-CIO v. Div. of Motor Vehicles, 262 N.J. Super. 598, 605 (App. Div. 1993)).

However, an appointing authority retains discretion to bypass a higher-ranked candidate "for any legitimate reason based upon the candidate's merit." In re Hruska, 375 N.J. Super. 202, 210 (App. Div. 2005); see also In re Crowley, 193 N.J. Super. 197, 214 (App. Div. 1984) (an appointing authority can bypass a higher-ranked candidate for any "legitimate reason"). Indeed, an appointing authority has "broad discretion" to consider a wide range of subjective factors. Terry, 86 N.J. at 150. It is only prohibited from using discriminatory reasons to make its decision—for example "anti-union animus or discrimination based on . . . race, ancestry or gender." Foglio, 207 N.J. at 57 n.5.

A higher-ranked candidate challenging a bypass bears the burden of establishing by a preponderance of the evidence that the appointing authority's bypass decision was motivated by discrimination, retaliation, or other improper motive. See N.J.A.C. 4A:2-1.4(c). Once the candidate makes a prima facie showing, the burden of production—but not the burden of persuasion—shifts to the authority to present a legitimate, non-discriminatory reason for the decision. Jamison v. Rockaway Twp. Bd. of Educ., 242 N.J. Super. 436, 445 (App. Div. 1990). Should the authority meet its burden, the candidate can still prevail if

the candidate shows that the articulated reasons are pretextual or that an improper motive was more likely responsible. Ibid. If the candidate meets that burden, the candidate has established a presumption of discriminatory or retaliatory intent and the burden shifts to the authority. Id. at 446. The authority must then prove that the action would have taken place regardless of the discriminatory or retaliatory motive, usually by showing that the other candidates had better qualifications. Ibid.

Here, the Commission rejected petitioner's appeal after it concluded he failed to "present[] any witness statements, documents or other evidence" showing he was bypassed "not for legitimate business reasons, but for unlawful or invidious motivation due to his union affiliation." The Commission also noted that the Board "presented legitimate business reasons for" bypassing petitioner. There is ample support in the record for these conclusions.

Petitioner did not meet his initial burden because he failed to present any evidence that he was bypassed because of his union involvement. Indeed, the only evidence petitioner offered was his characterization of several incidents and resulting discipline. These incidents, however, are insufficient to demonstrate the Board or the Commission was motivated by anti-union animus.

11

And, as the Commission noted, the Board had recently promoted two union-affiliated firefighters.

Moreover, the Commission correctly concluded the Board had provided legitimate, non-discriminatory reasons for bypassing petitioner. Although Sullivan had a slightly lower test score, the Commission explained why he was the "best candidate for the position based on his fitness, merit, experience, service to the District, and passion for the Deputy Fire Chief Position."

Because petitioner has failed to meet his burden to show that the Board's decision was based on an improper motive and the Board provided legitimate reasons for his bypass, we are satisfied the Commission's action to affirm the Board's decision was not arbitrary or capricious but instead supported by the substantial evidence in the record. There is no demonstrated unlawful or improper motive in the agency's appointment.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12